336 A.2d 290
**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Gregory MARTIN, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 21, 1974.

Decided April 17, 1975.

290

Berle M. Schiller, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Assistant Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Gregory Martin was convicted by a jury of murder in the first degree, two charges of aggravated robbery, conspiracy, carrying a concealed deadly weapon and unlawfully carrying a firearm without a license. After a denial of post trial motions, a sentence of life imprisonment

was imposed on the murder conviction. A prison sentence of ten to twenty years was imposed on each of the robbery convictions; these sentences to run concurrently with the life imprisonment sentence. Sentence was suspended on the other convictions. An appeal from the judgment of sentence imposed on the murder conviction was filed in this Court. An appeal from the judgments of sentence imposed on the robbery convictions was filed in the Superior Court and later certified here. The appeals were consolidated for argument and disposition.

The sufficiency of the evidence to sustain the convictions is not challenged, nonetheless we have examined the record and are completely satisfied the evidence was more than adequate. From the Commonwealth's testimony, which remained uncontradicted throughout the trial, the jury could find these facts.

On January 4, 1971 about 10:30 p.m., Arthur Hopkins left a bar at 20th and York Streets in Philadelphia intending to visit his mother. Accompanied by Edmund Perry, he proceeded to his automobile which was parked nearby. As Hopkins started to unlock the door of the vehicle, four men, including the appellant Martin, approached with guns drawn. The gunmen threatened to kill them both unless they cooperated. Hopkins and Perry were ordered to enter Hopkins' car. Three of the four gunmen joined them. The fourth followed closely behind in another car. The two vehicles traveled to 19th and Cumberland Streets. The captives were then ushered through an alley into a house through the back entrance. In the kitchen, Hopkins and Perry were searched and ordered to sit on the floor. The abductors took from Hopkins $400 in cash and his eyeglasses. Perry was also robbed of some monies. Their hands were then tied behind their backs and they were blindfolded. They were then led out the front door of the house and forced into the back seat of Hopkins' car where they were joined by Martin. He ordered them to bend over

on the rear seat. In the meantime, Hopkins' blindfold became partially dislodged and he was able to observe a rifle or sawed-off shotgun in the hands of a front seat passenger. He was also able to see through the rear view mirror the same car following that had followed them before. After driving awhile the car stopped. The captives were led into a house having a small passageway and ordered to kneel. It was pitch dark. A match was lit and a loud noise went off. Edward Perry was fatally shot in the head by a shotgun. He fell against Hopkins. Hopkins began to struggle, but he was pushed back to the floor and a second shot was fired. He yelled that he was struck albeit he was not. A third shot went off narrowly missing Hopkins' head. At that time, he played dead. His would-be killers fled. After waiting a few minutes, Hopkins managed to free himself. He found assistance and reported the crime to the police.

 While not questioning the sufficiency of the evidence, Martin maintains he was denied a fair trial because of certain conduct pursued by the assistant district attorney at trial. Initially, he complains of this officer's opening statement to the jury. It is urged it contained "many knowing false, misleading or inadmissible assertions" which so inflamed and prejudiced the jury against Martin that a fair trial was impossible.[1]

1. The opening statement of the prosecution should be limited to a statement of the facts which it intends to prove and the legitimate inferences deduced therefrom. See *Commonwealth v. Cannon*, 386 Pa. 62, 123 A.2d 675 (1956), and *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). See also the A.B.A. Project on Standards for Criminal Justice, Relating to the Prosecution Function and the Defense Function. Section 5.5 [approved Draft, 1971] says, in part:

"In his opening statement the prosecutor should confine his remarks to evidence he intends to offer which he believes in good faith will be available and admissible and a brief statement of the issues in the case. It is unprofessional conduct to allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted in evidence."

■■ One such alleged statement was that the evidence would show the killing was a "planned assassination for hire" by "hit men or professional assassins, killers and terrorists." This was strong language, but in most part a legitimate inference to be drawn from the testimony. The brutal nature of the killing, and the systematic and cold execution thereof bespeaks of a gangland-type killing. It is true the trial evidence failed to show the killing was "for hire" and, hence, the assistant district attorney should not have so indicated in his opening,[2] but this inadvertence, in itself, could not have given rise to the prejudice Martin asserts. And, as we have said previously, language of the prosecuting officer in the opening statement which will justify a reversal must be such that its unavoidable effect is to so prejudice the jury against the accused, as to prevent the finding of a true verdict. See *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970). It should also be noted that in more than one instance instantly the trial judge cautioned the jury that statements of counsel were not evidence and that the jury and only the jury was to determine the facts. Under all of the circumstances, we find the complaint under discussion to be without sufficient merit to require a retrial. Cf. *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973); *Commonwealth v. Gordon*, 431 Pa. 512, 246 A.2d 325 (1968); and, *Commonwealth v. Cannon*, 386 Pa. 62, 123 A.2d 675 (1956). *Commonwealth v. Fairbanks*, 453 Pa. 90, 306 A.2d 866 (1973), relied upon by Martin is distinguishable. There the Commonwealth introduced testimony which was inadmissible, as well as prejudicial, and referred to this testimony not only in the opening statement, but repeatedly throughout the trial.

■■ We have examined the other statements made by the assistant district attorney during his opening of

2. The record indicates this language was not used by the assistant district attorney during the trial except in one instance in his opening statement.

which complaint is made and discern nothing which constitutes reversible error.[3] This assignment of error is, therefore, overruled.

██ The only other remaining assignment of error properly before us concerns the prosecutor's exercise of peremptory challenges.[4] It is urged these challenges were used to exclude blacks from sitting on the jury. The record discloses the Commonwealth exercised fourteen peremptory challenges. Eight were utilized to excuse black persons and six were utilized to exclude white persons. Martin exercised seventeen challenges. All were white persons. No black person was either a jury member or an alternate.[5]

In past decisions, we have recognized that:

"It is a violation of due process to exclude jurors by reason of their race. *Whitus v. Georgia*, 385 U.S. 545,

3. Complaint is made that in his opening statement the prosecuting officer referred to Martin and others involved as members of the Muslim Church and also identified them by their Muslim religion names. However, the testimony fully justified these references and we are not persuaded they were mere assertions intended to inflame the jury.

Complaint is also made that in the opening statement the prosecuting officer referred to the weapons and ammunition found at the Nineteenth Street address where the victims were first taken. This was based on the trial testimony and did not exceed the bounds of propriety.

Complaint is made of the prosecuting officer's statement that one of the participants in the crimes had fled to a foreign country. While this was an overstatement, the uncontradicted trial testimony discloses that after the crimes, Martin and others involved did flee to New Mexico and that one is still missing. Under the circumstances, this overstatement was of minimal consequence.

4. Martin also contends the assistant district attorney's "overstatement and misstatement of the facts in his closing speech" prejudiced the jury against him and made a fair trial impossible. However, this complaint was not cited as cause for a new trial in the trial court and may not now be asserted on appeal. *Commonwealth v. Clair*, —— Pa. ——, 326 A.2d 272 (1974), and *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973).

5. The Commonwealth and Martin were each entitled to twenty peremptory challenges. See Rule 1126, Pennsylvania Rules of Criminal Procedure.

87 S.Ct. 643, 17 L.Ed.2d 599 (1967), and *Pierre v. Louisiana,* 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939). The burden of proving the existence of a purposeful discrimination is on the party who asserts it; however, if a prima facie case is established, then the burden shifts to the prosecution. *Whitus v. Georgia,* supra."

*Commonwealth v. Darden,* 441 Pa. 41, 51, 271 A.2d 257, 262 (1970). While an individual "has no right to demand that members of his race be on the jury which tries him, however, he does have a right to require a state not to deliberately and systematically exclude members of his race from the jury panels and from the juries ultimately drawn from those panels, consequently, he must prove *systematic exclusion,* thereby demonstrating a violation of the Equal Protection Clause. Moreover, a defendant may not demand proportionate numbers of his race on the jury which tries him, or on the panel from which the jury is selected, but he does have a right to a jury drawn from a panel which represents a cross-section of the community. *The defendant has the initial burden of demonstrating a prima facie case of discrimination,* then the burden shifts to the Commonwealth to rebut the evidence, if the Commonwealth fails, the selection system does not meet the requisite constitutional standards and the defendant is entitled to another jury, selected under a system which complies with the constitutional mandate." [Emphasis supplied.] *Commonwealth v. Jones,* 452 Pa. 299, 311–312, 304 A.2d 684, 691–692 (1973).

In addition, the Supreme Court of the United States in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), addressed the issue of a prosecutor's conduct in exercising peremptory challenges. The Court stated that:

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in

connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. *The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.* Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case." [Emphasis supplied.]

*Id.* at 222, 85 S.Ct. at 837. This presumption, however, is overcome—

"when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, . . . .."

*Id.* at 223, 85 S.Ct. at 837. In *Swain,* the Court did not pursue the issue because the record was insufficient to show the rule had been violated by the peremptory system in the county in question.

▉ The same situation confronts us today. Martin merely proffers the bald assertion that the prosecutor systematically used his peremptory challenges to prevent black persons from being jury members or alternates. He has failed to produce a scintilla of evidence in support of this proposition. Moreover, the record is bare of any factual information from which we could infer a constitutional violation.

Judgments affirmed.

POMEROY, J., did not participate in the consideration or decision of this case.

NIX, J., filed a dissenting opinion.

MANDERINO, J., dissents.

NIX, Justice (dissenting).

I respectfully dissent from that portion of the majority opinion which dismisses appellant's claim that he was denied a fair trial by reason of the Commonwealth's complete exclusion of Black jurors from the jury which tried him. Under the admitted facts, all of the prospective Black jurors who were members of the panel from which the petit jury which convicted appellant was selected were rejected. Two were excused for cause, the remaining eight members were challenged peremptorily by the Commonwealth.

The majority relied upon the presumption suggested by the Supreme Court of the United States in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), to overcome this blatant discriminatory exclusion of Blacks from this jury and to foreclose the right of appellant to complain. The Supreme Court in *Swain* stated:

"The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." *Id.* at 222, 85 S.Ct. at 837.

In *Swain* the Court reasoned that the presumption is only overcome where the prosecutor *in case after case* is responsible for the removal of all Negroes from every jury. *Id.* at 223, 85 S.Ct. 824.

Is justice to sit supinely by and be flaunted in case after case before a remedy is available? Is justice only obtainable after repeated injustices are demonstrated? Is there any justification within the traditions of the Anglo-Saxon legal philosophy that permits the use of a presumption to hid the existence of an obvious fact?

Blackstone, in his Commentaries, says, "The right of trial by jury, or the country, is a trial by the peers of every Englishman, and is the bulwark of his liberties, and is secured to him by the Great Charter." In America, the right of trial by jury in this pluralistic society must at least mean trial by fellow citizens regardless of race.

"The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880).

The glaring weakness in the *Swain* rationale is that it fails to offer any solution where the discriminatory use of peremptory challenges is made on a selected basis. In Northern communities systematic exclusion of an entire racial group from juries is rarely seen. More frequently, the problem arises in cases where the facts give rise to racial overtones and where an objective and unbiased jury is most needed. *Swain* provides no protection against this type of abuse. To the contrary, it facilitates its perpetuation.

While there is possible justification for the Supreme Court of the United States who must be concerned with the quality of justice throughout the nation to confine its attention to the most blatant examples of exclusion based on race in jury selection, a state should be more concerned with the particular kind of injustice that may be found within its borders. It must be remembered there is no constitutional right granted to the State to have peremptory challenges. It is, however, abundantly clear

that both the Federal and the Pennsylvania Constitution guarantee the accused the right of trial by his peers. U. S.Const., Amend. VI; Pa.Const., Art. II, § 9. It would seem incumbent upon this Court to interpret our constitutional provision in such a manner that it meets the kind of injustices which are prevalent within this jurisdiction.

While I have great respect for the tradition of peremptory challenges, no tradition can be allowed to perpetrate injustice. Where, as here, it is apparent that the only available Black jurors were challenged peremptorily by the Commonwealth [1] and the record of voir dire offers no basis for their rejection except race, it is, in my judgment, unreasonable to conclude that a presumption can justify a finding that the prosecutor's use of the challenge was only to obtain a fair and impartial jury. There is no justification for the use of a presumption to obscure fact. Its only legitimate evidentiary value is to assist in determining truth. Under the facts of this case, I believe the burden should be shifted to the prosecution to rebut the inference of improper exclusion of Black jurors. *Commonwealth v. Darden*, 441 Pa. 41, 51, 271 A.2d 257, 262 (1970).

I would remand the matter for a hearing to afford the Commonwealth an opportunity to explain the bases, other than race, for the peremptory challenges to the eight Black jurors.

1. In my view the two jurors excused for cause were obviously not jurors available for service in that case.