371 A.2d 957

**COMMONWEALTH of Pennsylvania**

v.

**John Nathaniel JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1976.

Decided March 31, 1977.

———◆———

Lewis L. Maltby, Philadelphia, for appellant.

Francis C. Barbieri, Jr., Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Following indictment, appellant was tried before a jury and convicted of rape and burglary. This appeal is from the lower court's judgment of sentence.

Appellant's sole contention relates to the prosecutor's exercise of peremptory challenges. It is argued that these challenges were utilized to exclude blacks from the jury. Unfortunately, appellant's counsel failed to have the race of each juror noted for the record. Thus the record is far from clear on this matter. The lower court, however, has apparently accepted appellant's recollection of the following events. The total jury panel of 79 included 22 blacks. Of those 22, 8 were challenged for cause or otherwise excused. The remaining 14 black prospective jurors were excused when the prosecutor exercised his peremptory challenges. Only once did the Commonwealth utilize a peremptory challenge to exclude a white prospective juror. The ultimate trial jury was composed of 12 white jurors. Based solely upon the foregoing numbers, appellant contends that the prosecutor engaged in a purposeful discrimination against black prospective jurors. These numbers alone, however, do not constitute sufficient evidence to establish a constitutional violation.

■ In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) the Supreme Court discussed the issue of racial exclusion on juries through the utilization of peremptory challenges. The Court pertinently observed that:

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. *The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.* Any other result, we think would establish a rule wholly at odds with the peremptory challenge system as we know it." [Emphasis supplied.]

*Id.* at 222, 85 S.Ct. at 837. Furthermore, the Court stated this presumption is overcome:

". . . when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, . . ."

*Id.* at 223, 85 S.Ct. at 837. See also *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975). Thus, the presumption that the prosecutor exercised his peremptory challenges in a proper manner is only overcome where the defendant produces evidence that in *case after case* the prosecutor, regardless of the circumstances, is responsible for the removal of all blacks from every jury.

■ In the case at bar, appellant simply asserts that the prosecutor discriminated against blacks in selecting this particular jury. The record is devoid of any evidence that the District Attorney's Office of Philadelphia County has pursued a policy of systematically utilizing peremptory challenges to exclude blacks from serving as jurors. See *Commonwealth v. Martin, supra.* Accordingly, appellant's contention must be rejected.

Judgment of sentence is affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1955), the Court recognized the tension between two competing principles applicable to the trial of a criminal case. On the one hand, as a matter of long-established practice, the prosecutor has never been required to explain why he exercised a peremptory challenge, the reasoning being that the essence of a peremptory challenge is that it may be exercised for purely subjective reasons, which may be quite arbitrary or capricious. (Some prosecutors believe that a male juror will be sympathetic to a female complaining witness, a female juror, unsympathetic. Is this belief anything more than hunch? Superstition? Prejudice?) On the other hand, no one should be excluded from a jury on the basis of race.

In *Swain* the Court attempted to resolve this tension by requiring that "the defendant must . . . show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time." *Id.* at 227, 85 S.Ct. at 839. The majority accepts this solution; I do not. Although I think I recognize the difficulty of the problem, I believe a better solution can be devised, and that *Swain* itself contemplates this possibility.

## 1

The principal premise of *Swain* is acceptance of the "very old credentials" of the peremptory challenge. 380 U.S. at 212, 85 S.Ct. 824. I acknowledge "the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Id.* at 219, 85 S.Ct. at 835. I am nevertheless skeptical of that belief, and in this I am not alone. Thomas McBride, surely one of the finest trial lawyers to practice at the Pennsylvania bar, or any other bar, and later Justice of our Supreme Court, told of a trial at which he represented a young woman charged with murdering her newborn illegitimate baby. In selecting the jury Mr. McBride exercised a peremptory challenge to remove a stern old man, only to hear him say, after the jury had returned a verdict of guilty, "I would never have convicted that poor child." Any trial lawyer of wide experience can tell a similar story.

Racial prejudice is one of the ugliest aspects of our society. Stated in its broadest terms, the issue in the present case is how the courts should respond to racial prejudice in the context of trial practice. Generally speaking, I believe the courts have played an honorable, and sometimes I should say even a noble, role in combatting racial prejudice. *See,* e. g., *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). I am sure the Court in *Swain* did not regard its response as final; courts must feel their way in matters of this sort. Now, I suggest, the time has come to take a further step. In deciding upon that step we should not be too persuaded that the "very old credentials" of the peremptory challenge imply true value.

## 2

In *Swain* the Court noted that to require the defendant to "show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time," *id.* at

227, 85 S.Ct. at 839, was "especially [appropriate] where the same prosecutor for many years is said to be responsible for this practice and is quite available for questioning on this matter," *id.* at 227–28, 85 S.Ct. at 840. Thus the Court had no occasion to consider what should be its response to selective, as distinguished from systematic, discrimination.

Mr. Justice NIX has recently made a comparable observation, in his dissent in *Commonwealth v. Martin,* 461 Pa. 289, 299, 336 A.2d 290, 295 (1975):

> The glaring weakness in the *Swain* rationale is that it fails to offer any solution where the discriminatory use of peremptory challenges is made on a selected basis. In Northern communities systematic exclusion of an entire racial group from juries is rarely seen. More frequently, the problem arises in cases where the facts give rise to racial overtones and where an objective and unbiased jury is most needed. *Swain* provides no protection against this type of abuse. To the contrary, it facilitates its perpetuation.

The facts of the present case illustrate the problem addressed by this statement. Appellant, a black man, was accused of raping a white woman. Of 22 black persons on the jury panel, 8 were challenged for cause, and were excused, and 14 were removed by the prosecutor exercising his peremptory challenges. Only once did the prosecutor exercise a peremptory challenge to remove a white person from the panel. In the end, the jury was composed of twelve white jurors.

I agree that these facts do not by themselves prove that the prosecutor excluded anyone from the jury solely on the basis of race; but they at least suggest he may have. Given this suggestion, in my opinion we should hold that the trial judge should have the power in his discretion to require that the prosecutor explain the basis of his peremptory challenges.

I do not pretend that to give the judge this power would accomplish very much. No doubt a racially prejudiced prosecutor could and might conceal the basis of his challenges by offering the judge an untrue explanation. Nevertheless, something would be accomplished. An experienced and sensitive trial judge usually has a pretty good idea of what is happening in his court room. Under the majority opinion, he must sit idly by, even though he believes that racial prejudice is being practiced. Were we to enable the judge to make inquiry, I suggest that such practice would be at least somewhat less likely to occur.[1]

I grant that to hold the judge should have this power would go beyond the holding in *Swain*. As already remarked, however, I do not read *Swain* as intended to be an unchangeable utterance; it was decided in 1965, and the Court has repeatedly shown its willingness to be innovative when confronted with racial prejudice. *See, e. g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Gaston County v. United States,* 395 U.S. 285, 89 S.Ct. 1720, 23 L.Ed.2d 309 (1969). In any case, the Pennsylvania Constitution, as well as the Federal Constitution, guarantees the right to jury trial. Pa. Const., art. I, § 9. In interpreting that guarantee we are empowered to go beyond the Federal courts. *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975); *and see* my concurring and dissenting opinion in *In the Matter of James Sharp, Jr.* (J. 1304/1976), and my dissenting opinion in *Commonwealth v. Johnson,* 242 Pa.Super. 188,

---

1. In his dissent in *Commonwealth v. Martin, supra,* Mr. Justice NIX says: "Under the facts of this case, I believe the burden should be shifted to the prosecution to rebut the inference of improper exclusion of Black jurors." *Id.* at 300, 336 A.2d at 295. I have not spoken in terms of burden of proof for I contemplate that the judge's inquiry would usually be informal and not involve an evidentiary hearing.

528

363 A.2d 1223 (1976), where I have collected some of the authorities.

3

Even if one accepts the majority's decision not to go beyond *Swain,* still, that should not end our discussion of the case. As matters stand now, a defendant cannot comply with *Swain* ; he cannot "show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time" because the records that would enable him to make such a showing are not maintained. Although this court does not have the power to order that such records be maintained, our Supreme Court does. Under Article 5, Section 10, of the Pennsylvania Constitution, the Supreme Court has "general supervisory and administrative authority over all the courts", Section 10(a), including "the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . .", Section 10(c). The very least we should do is to express the hope that the Supreme Court will exercise these powers in a way that will give substance to the rule of *Swain.* To tell a defendant that he has a remedy, knowing that as a practical matter he does not, while at the same time doing nothing to see that he does, is unbecoming.

In *United States v. Robinson,* 421 F.Supp. 467 (1976), the United States District Court of Connecticut found that the statistical proof offered by the defendants was sufficient to establish that "the pattern of government peremptory challenges of Black veniremen has now reached an excessive point that calls for the exercise of this Court's supervisory power over the conduct of criminal trials in this District." At 473. The District Court therefore ordered the names of four black persons who had been peremptorily challenged restored to the jury wheel. In addition, the court ordered that thereafter the United States Attorney's office should keep records of

the racial composition of the jury panels and the number of black panel members who were excluded by the exercise of peremptory challenges. On appeal, the United States Court of Appeals for the Second Circuit vacated both orders. 549 F.2d '240 (1977). With respect to the order that the four names be restored to the wheel, the Court of Appeals found that the statistical proof presented to the District Court had been improperly prepared in that figures from jury lists in different divisions (the Hartford and New Haven Divisions) had been combined. With respect to the order that records be kept, the Court of Appeals was of the opinion that there was no need for such records. In this regard the Court particularly relied on statistics already available and submitted by the Government to the District Court, which persuaded the Court that there was no purposeful discrimination based on race alone. This decision, I suggest, supports the proposition that given a proper factual showing, an appellate court may exercise its supervisory power over the trial courts to require that such records be kept as will enable determination of whether discrimination is being practiced.

4

Having thus disagreed with the majority's unqualified, and I submit uncritical, acceptance of *Swain v. Alabama, supra,* I nevertheless agree with its result. Here, appellant's counsel did not begin to develop the sort of record he might have; in particular, he neither sought himself to question the prosecutor nor to have the judge do so.

I therefore concur in the order affirming the judgment of sentence.