424 A.2d 1231

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Clifford FUTCH.**

Supreme Court of Pennsylvania.

Argued Oct. 3, 1980.

Decided Jan. 30, 1981.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., for appellant.

Leonard Sharon, Claudia C. Sharon, Paul Gettleman, Eleanore Gettleman, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from the order of the Court of Common Pleas of Allegheny County holding the statute authorizing peremptory challenges, Act of October 7, 1976, P.L. 1089, § 1, formerly 19 P.S. § 811a, unconstitutional as applied in

the selection of jurors for appellee's trial.[1]  The court entered its order after an evidentiary hearing on appellee's motion to prevent the Commonwealth from exercising its peremptory challenges without restriction to strike black prospective jurors.  The order was based on the court's finding that peremptory challenges are used by some assistant district attorneys in the District Attorney's Office of Allegheny County to achieve systematic exclusion of blacks from juries in cases involving black defendants and white victims.  The lower court certified the order for interlocutory review pursuant to 42 Pa.C.S. § 702(b), and this Court granted the Commonwealth's petition for permission to appeal.  We conclude that appellee has not established that the Commonwealth impermissibly exercised its peremptory challenges to strike black prospective jurors in the trial of his case.  Therefore, the order of the court of common pleas is vacated and the case remanded for trial.

On April 15, 1980, jury selection began in the trial of appellee, Clifford Futch, a black inmate charged with murder for the death of a white inmate at Western Penitentiary in 1975.  The court conducted a general voir dire of the jury panel and then announced that additional questions would be asked of the prospective jurors on an individual basis.

The first venireman to be called was Richard McHenry, a forty-seven year old black man.  The court asked him questions concerning his background, including education, employment, military service and family status.  The court also asked questions relating to the hardship which jury service might impose and the prospective juror's ability to return "a fair and just verdict" based on the evidence presented and the court's instructions.  Mr. McHenry was also asked two further questions:

1.  This statute was repealed by the Act of April 28, 1978, P.L. 202, § 2(a) [1479], 42 P.S. § 20002(a) [1479] (1980) (effective June 27, 1980).  It has been restated in Pa.R.Crim.P. 1126(a)(3), effective August 1, 1980, which provides: "In trials involving a capital felony and where there is only one defendant, the Commonwealth and the defendant shall each be entitled to twenty (20) peremptory challenges."

"Q. Would the race or religion of any person involved in this case prejudice you in any way?

\* \* \* \* \* \*

Q. Have you or any member of your immediate family been the victim of any crime of violence?"

He responded "no" to both questions.

Upon conclusion of the court's colloquy, the Commonwealth asked one question: "Do you have any fixed moral or religious scruples against the imposition of the death sentence in a proper case?" This question was also answered in the negative. Defense counsel than conducted a lengthy voir dire, followed by questions from the defendant himself. Mr. McHenry's responses to these questions revealed, inter alia, that he was acquainted with two members of the staff of Western Penitentiary and that he recalled that his wife had mentioned the name "Futch" as having been reported unfavorably in the news media, although he could not recall any details. He testified, however, that his acquaintanceships and the knowledge of unfavorable news coverage did not prejudice him against appellee and that he felt he could be fair as a juror. Immediately after voir dire of this prospective juror, the following exchange ensued:

"THE COURT: You are first.

THE COMMONWEALTH: I challenge.

THE COURT: That's commonwealth's challenge number one.

MR. GETTLEMAN: We want the record to reflect that the first person stricken was a black man. We would like to dismiss this panel. We would like a hearing on the case . . ."

Despite expressing some reservation concerning the propriety of conducting an evidentiary hearing at this stage in the proceeding,[2] the court dismissed the jury panel and scheduled a hearing.

**2.** The court stated: "Well, does the mere fact that he has struck the very first juror that we have voir dired, is this an indication of the continuation of what you say is a pattern? I don't know whether it is or isn't." Record at 30–31B.

At the hearing the defense specified the basis for its motion to restrict the prosecution's use of its peremptory challenges:

"Your Honor, the basis of our motion today is that we intend to show by various witnesses that it has been a course of conduct by the District Attorney's Office, where the defendant in Allegheny County is black, and a jury is chosen, that the District Attorneys systematically use their peremptory challenges to preclude the defendant the right to determine whether he or she would have a black juror on their trial. It is our claim that the defendant has the absolute right, under the Sixth Amendment of the United States Constitution and the Pennsylvania Constitution [Article I, Section 9], to have a jury of his or her peers, whereas the right to use peremptory challenges is only a statutory right." [3]

The defense then presented the testimony of eighty-two witnesses, including defense attorneys and former assistant district attorneys from Allegheny County, two trial judges of the Court of Common Pleas of Allegheny County, and former black criminal defendants who had been convicted in jury trials. The testimony was primarily opinion evidence to the effect that the current administration of the District Attorney's Office of Allegheny County has pursued an implicit policy of striking black prospective jurors from cases with black defendants. However, several defense attorneys and former black criminal defendants testified that as a matter of trial strategy the defense has also occasionally stricken black prospective jurors.

The trial transcript contains little statistical evidence. Most witnesses had no records of prior cases and recalled only a few specific cases in which the Commonwealth had stricken all black prospective jurors. The witness who gave the most statistical detail was Paul Gettleman, Esq., appellee's counsel. Mr. Gettleman testified as to twenty-two jury trials in which he represented black defendants. In nine of these trials, 41%, one black served on the jury.

3. Record at 9A.

At the close of defendant's evidence, the court ruled that the defense had established a prima facie case that some prosecutors in the District Attorney's Office exclude all black prospective jurors by peremptory challenge and that the Commonwealth therefore had the burden of rebutting the prima facie case. The court stated:

"The Court finds that there is not a pattern of systematic exclusion by the District Attorney's Office. There is no evidence whatsoever that Mr. Colville or Mr. Copetas or any of the supervisors in the District Attorney's Office have encouraged or suggested this to be a policy of the office. However, the Court does find that the defense has established a prima facie case in that there are some Assistant District Attorneys . . . [who] have engaged in this practice unless they are insulated by being black themselves or having black police officers or some other reason. Therefore at this point in time . . . the burden shifts to the District Attorney." [4]

The Commonwealth objected to the ruling on the ground that a prima facie case required a showing of "official policy" on the part of the District Attorney's Office to exclude blacks. It proceeded, however, to call one witness, Lawrence Claus, Chief Trial Deputy of the District Attorney's Office of Allegheny County. Mr. Claus testified that he supervised sixty-three trial attorneys and was unaware of any policy or directive to any assistant district attorney to exclude blacks from juries. The Commonwealth rested its case, repeating its position that the defendant had not established a prima facie case of racially motivated exclusion of blacks from juries.

Proceeding on the premise that a prima facie case had been established, the court found that the Commonwealth had not met its burden of rebuttal. The court concluded that the peremptory challenge as used by the prosecution impaired the defendant's right to a fair trial.[5] This appeal followed.

4. Record at 520–21A.

5. The court based its conclusion on three findings of fact:

The parties agree that "[t]he presumption in any particular case must be that the prosecutor is using the state's [peremptory] challenges to obtain a fair and impartial jury to try the case before the court." *Swain v. Alabama,* 380 U.S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965). See also *Commonwealth v. Brown,* 490 Pa. 560, 417 A.2d 181, 186 (1980); *Commonwealth v. Martin,* 461 Pa. 289, 297, 336 A.2d 290, 294 (1975). However, the parties disagree as to what burden of proof the defendant must meet to rebut this presumption. The Commonwealth and appellee Futch each urge a different legal standard for this Court to employ in the evaluation of appellee's claim that the prosecution has violated his right to a fair and impartial jury drawn from a representative cross-section of the community. According to appellee, this violation is the result of the Commonwealth's alleged practice of using its peremptory challenges to exclude blacks from juries solely because of race. The Commonwealth would have us adhere to our past decisions in which this Court has applied the standard enunciated in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). That case presented a Fourteenth Amendment equal protection challenge to the prosecutor's use of the peremptory challenge to exclude black prospective jurors. See *Commonwealth v. Brown,* supra and *Commonwealth v. Martin,* supra; see generally Younger, Unlawful Peremptory Challenges, 7 *Litigation: Trial By Jury* (ABA), at 23 (Fall 1980). Appellee Futch, on the other hand, argues that we should not apply the *Swain* standard in the context of an alleged federal and state constitutional violation of the right to a

"1. There is no written policy in the District Attorney's Office regarding the exclusion of blacks from juries.

2. In cases where there is a black defendant and a white victim, there is a systematic exclusion of blacks from juries by many different Assistant District Attorneys, including Assistant District Attorney Joseph Steele [prosecutor in appellee's case], who are agents, servants and employees of the District Attorney's Office.

3. There is an unwritten policy of systematic exclusion of blacks from juries by the District Attorney's Office by the use of peremptory challenges when the defendant is black and the victim is white."

Record at 598A.

fair and impartial jury. He urges that we apply the less stringent evidentiary standard recently adopted by California and Massachusetts. See *Commonwealth v. Soares*, —— Mass. ——, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).[6] See also *State v. Crespin*, 94 N.M. 486, 612 P.2d 716 (1980); see generally *Mallott v. State*, 608 P.2d 737 (Alaska 1980).

The critical distinction between the *Swain* and *Wheeler-Soares* standards is that under *Wheeler* and *Soares*, a defendant need only prove discriminatory use of the peremptory challenge in the jury selection of his own case, whereas under *Swain*, he must also establish "the prosecutor's systematic use of peremptory challenges against Negroes over a period of time." 380 U.S. at 227, 85 S.Ct. at 839. Here, however, appellee has not established a record which indicates discrimination in the jury selection of his own case, an essential requirement under either standard.

Although the record does not reveal the number of blacks on the venire in appellee's case, appellant's brief states that there was at least one black venireman in addition to the

---

**6.** *People v. Wheeler*, involving seven peremptory challenges exercised against black prospective jurors, set forth the following requirements for a prima facie case of discriminatory use of the peremptory challenge:

"First, ... [the challenger] should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias."

22 Cal.3d at 280, 148 Cal.Rptr. at 905, 583 P.2d at 764 (Footnote omitted).

*Commonwealth v. Soares*, involving peremptory challenges exercised against 12 of 13 black prospective jurors, articulated a similar standard. It requires a showing that:

"(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership."

—— Mass. at ——, 387 N.E.2d at 517.

one challenged. Appellant's brief at 34. Thus, there is no way to know whether the prosecution would have used its peremptory challenges to exclude all black prospective jurors if jury selection had continued.[7] Further, the record of voir dire offers a basis other than race for challenge of the single black prospective juror at issue in this case. Voir dire indicated that the challenged prospective juror was acquainted with staff members of Western Penitentiary where the alleged murder took place and that he had had some exposure, albeit minimal, to news reports concerning the present defendant.

Instead of building a record by allowing jury selection to proceed beyond the prosecution's peremptory challenge of the first black prospective juror, appellee requested and was granted an evidentiary hearing on past Commonwealth use of the peremptory challenge. Proof of past practice is irrelevant under the standard of *Wheeler* and *Soares* which appellee urges this Court to adopt and apply. Although, as previously indicated, such proof is essential under *Swain*, appellee cannot establish a prima facie case of discrimination merely by producing evidence of a past exclusionary practice by the Commonwealth. There must also be proof that the challenged practice has been applied to appellee-defendant, thereby causing actual deprivation of a constitutional right. As Mr. Justice White admonished in *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 102, 84 S.Ct. 1594, 1616, 12 L.Ed.2d 678 (1964) (concurring opinion), the

---

7. We in no way intimate that total exclusion of all black prospective jurors is essential to a prima facie case of improper use of the peremptory challenge in a particular case. Whether a prima facie case has been established would depend in part on the relationship between the number of prospective black jurors and the number of peremptory challenges exercised against them. See *Commonwealth v. Soares,* —— Mass. ——, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979) (showing that 12 of 13 black prospective jurors challenged is sufficient); cf. *United States v. Pearson,* 448 F.2d 1207 (5th Cir. 1971) (*Swain* standard does not require showing that impermissible use of peremptory challenges be exercised 100% of the time); *State v. Washington,* 375 So.2d 1162 (La.1979), and *State v. Brown,* 371 So.2d 751 (La.1979) (*Swain* test satisfied where "continual and conscious rejection of blacks" by prosecutor).

Constitution "protects against real dangers, not remote and speculative possibilities."

The prosecutor's peremptory challenge of one black prospective juror, the first and only venireman to be questioned on individual voir dire, accompanied by opinion evidence as to the practice of some individual assistant district attorneys in past trials, is insufficient under the standard of either *Swain* or of *Wheeler* and *Soares* to raise the inference of improper use of the peremptory challenge by the Commonwealth. Thus, it must be concluded that the trial court erred in finding that appellee had establish a prima facie case of discriminatory exclusion of black prospective jurors. Because appellee has not established a prima facie case under either standard we need not presently determine what standard of proof should be applied in this Commonwealth. That decision remains for a case which squarely presents the issue.

Order vacated and case remanded for proceedings consistent with this opinion.

NIX, J., files a concurring opinion.

NIX, Justice, concurring.

The majority again refuses to seize the opportunity to adopt a viable standard to eliminate the use of peremptory challenges in a manner violative of Article I, § 9, of the Pennsylvania Constitution.[1]

It has generally been conceded that group affiliation is deemed an indicator of unconscious bias. The exercise of peremptory challenges based on group affiliation is frequently used as a trial strategy, and on occasion even encouraged. *See,* ALI–ABA Joint Committee on Continuing Legal Education, Trial Manual 3 For the Defense of Criminal Cases, §§ 326–40 (3d.ed.1974). *Swain v. Alabama,* 380

1. Article I, § 9, of the Pennsylvania Constitution,
   Rights of accused in criminal prosecutions
   In all criminal prosecutions the accused hath a right to . . . trial by an impartial jury of the vicinage; . . . nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers. . . .

U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) rejected the petitioner's argument that a peremptory challenge based on group affiliation of race violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. That decision suggests the presumption of validity might be overcome where the prosecutor persistently excluded blacks over a period of time, but it could not be overcome by proof the prosecutor excludes blacks from a particular jury or "because they were Negroes." 380 U.S. at 222, 85 S.Ct. at 837. Yet in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) exclusion based on group affiliation (sex) was not condoned on the ground that the Sixth Amendment right to an impartial jury required the grand jury to be selected from a representative cross-section of the community. However, the representative cross-section standard was not applied to the composition of petit juries.

It is evident that the *Swain* standard will not effectively assure the individual's right to an impartial jury of one's peers, as mandated by Article I, § 9. If the right is not to be illusory, it is incumbent upon this Court to provide a test that will prohibit the use of peremptory challenges based on group membership. This can only be accomplished by setting forth a criteria for the establishment of a prima facie case rebutting the presumptive validity of the peremptory challenge.

The need for such criteria is evident from the quality of the testimony presented in this case regarding the widespread practice of using peremptory challenges by the prosecution to strike black prospective jurors in Allegheny County. "... [E]ighty-two witnesses, including defense attorneys, former assistant district attorneys from Allegheny County, two trial judges of the Court of Common Pleas of Allegheny County, and former black criminal defendants who had been convicted in jury trials" (Opinion, at 1232–1233) testified as to the issue, on behalf of the defense. Persons of integrity and high repute such as the Honorable Thomas A. Harper and the Honorable Ralph Cappy, Judges

of the Court of Common Pleas of Allegheny County, gave evidence. This testimony memorializes the fact that this Commonwealth, in the interests of justice, must address the problem forthwith.

While Mr. Justice Roberts notes the transcript contained little statistical evidence in this case, this Court has not addressed the problem of criteria for a prima facie case of rebuttal beyond the one set forth in *Swain, supra* [2] in spite of numerous opportunities to do so [3]. It is to be noted that although the majority stresses the lack of statistical data in this record, it must be remembered that this Court has not adopted the statistical decision theory.[4]

My disquietude with the lack of a method for rebuttal of the presumption of validity is not solitary. *See* Martin, The Fifth Circuit and Jury Selection Cases: The Negro Defendant and His Peerless Jury, 4 Hous.L.Rev. 443 (1966); Note, The Supreme Court, 1964 Term, 79 Harv.L.Rev. 103, 135–139 (1965); Comment, *Swain v. Alabama*: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52

**2.** [the presumption is overcome] when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries. 380 U.S. at 222, 85 S.Ct. at 837.

**3.** See Annot., Use of Peremptory Challenge to Exclude from Jury Persons Belonging to a Class or Race (1975), 79 A.L.R.3d 14, where the author concluded (at p. 24) in the 10 years after *Swain* ". . . all of the cases involving this issue thus far, all of which have dealt with blacks as the group peremptorily challenged, no defendant has yet been successful in providing to the court's satisfaction an invidious discrimination by the use of the peremptory challenge against blacks over a period of time."
The Pennsylvania experience has been identical.

**4.** This method of decision making has been subjected to the criticism that, in essence, the statistical method does not lend itself well to accurate evaluation, efficacy and concretization. *See* Kairys, et al., Jury Representativeness: A Mandate for Multiple Source Lists (1977); Kuhn, Jury Discrimination: The Next Phase, 41 S.Cal.L.Rev. 273–276 (1968).

Va.L.Rev. 1157 (1966); Note, Fair Jury Selection Procedures, 75 Yale L.J. 322 (1965); Note, Peremptory Challenge-Systematic Exclusion of Prospective Jurors on the Basis of Race, 39 Miss.L.J. 157 (1967); Note, The Jury: A Reflection of the Prejudice of the Community, 20 Hastings L.J. 1417 (1969); Comment, A Case Study of the Peremptory Challenge: A Subtle Strike at Equal Protection and Due Process, 18 St. Louis U.L.J. 662 (1974); Comment, The Prosecutor's Exercise of the Peremptory Challenge to Exclude Nonwhite Jurors: A Valued Common Law Privilege in Conflict with the Equal Protection Clause, 46 U.Cin.L.Rev. 554 (1977); Recent Development, Racial Discrimination in Jury Selection, 41 Alb.L.Rev. 623 (1977); Note, Limiting the Peremptory Challenge: Representation of Groups on Petit Juries, 86 Yale L.J. 1715 (1977).

This dissatisfaction has been previously expressed in dissents in *Commonwealth v. Brown*, 490 Pa. 560, 417 A.2d 181 (1980) and *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975). Reaffirming the essence of the *Brown* dissent [5] I again urge the majority of this Court to reconsider its position. Additionally, I urge the adoption of the Wheeler test partially mentioned in the majority opinion. Since I raised this complaint in *Martin, supra*, three major jurisdictions have seen the need to follow the suggested course of action.[6] Yet Pennsylvania remains intransigent.

However, I concur in the result because I agree with the majority's conclusion that even under the *Wheeler* test the presumption has not been overcome in this case.

---

**5.** The fact that this problem has repeated itself in this case and other cases since our pronouncement in *Martin* bears further evidence of the ineffectiveness of the *Swain* test in preserving the fundamental principles of fair trial in this jurisdiction.

460 Pa. 560, 417 A.2d at 188.

**6.** *Commonwealth v. Soares*, —— Mass. ——, 387 N.E.2d 499, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *State v. Eames*, La., 365 So.2d 1361 (1978).