467 A.2d 1346

**COMMONWEALTH of Pennsylvania**

**v.**

**George A. GREEN, a/k/a Richard Green, Appellant.**

Superior Court of Pennsylvania.

Submitted June 7, 1983.

Filed Nov. 18, 1983.

Petition for Allowance of Appeal Denied Feb. 29, 1984.

248

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

HESTER, Judge:

This appeal was taken from a judgment of sentence entered on June 12, 1980, in the Court of Common Pleas of Allegheny County, Pennsylvania. Appellant, George A. Green, a/k/a, Richard Green, was tried before a jury on charges of Robbery, Violation of Uniform Firearms Act and Possessing Instruments of Crime. A verdict of guilty was returned on Robbery. Motions for New Trial and in Arrest of Judgment were filed and denied. Appellant was sentenced on the Robbery Bill to a term of incarceration of not less than five years, nor more than twenty years.

The pertinent facts can be summarized briefly. On January 29, 1979, in late afternoon, appellant and his accomplice, Robert Lee Bryant, Jr., entered the Homestead Steelworkers Federal Credit Union Office on Grant Street, in the Borough of Munhall, County of Allegheny, Pennsylvania. While Bryant stood at the front door brandishing a sawed-off shotgun, appellant vaulted over the teller's counter and removed cash and checks from three teller drawers totaling $2,673.08. Appellant and Bryant then ran from the scene. Appellant was not apprehended until two months later.

It is appellant's first contention that the trial court erred in refusing to grant an evidentiary hearing on the prosecutor's alleged use of peremptory challenges to unconstitutionally exclude black jurors. In *Commonwealth v. Futch*, 492 Pa. 359, 424 A.2d 1231 (1981), the Pennsylvania Supreme Court was called upon to review a lower court's finding of the discriminatory use of peremptory challenges. In *Futch*, supra, the first venireman was a forty-seven year old black man who, following lengthy voir dire, was struck by the Commonwealth's first exercise of its peremptory challenges. Defense counsel promptly noted for the record the exclusion of a black man, requested dismissal of the panel and demanded a hearing on whether the Allegheny County District Attorney systematically used peremptory challenges to exclude blacks from juries where the defendant is black.

Although the parties agreed in *Futch*, supra, that peremptory challenges are presumed to be exercised by the Commonwealth in order to compose fair and impartial juries, *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), reh. denied 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965), they disagreed as to what burden of proof applied to rebut the presumption. The Commonwealth projected the burden of proof espoused in *Swain v. Alabama*, supra, i.e., that there must be proof of the prosecutor's systematic use of peremptory challenges to exclude blacks from juries over a considerable period of time. Conversely, the defendant asserted that the less restrictive *Wheeler-Soares* standard was applicable. *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, cert. denied 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). The *Wheeler-Soares* standard requires proof of the discriminatory use of peremptory challenges only in the particular case at issue.

The *Futch* court refused to establish whether the *Swain* or *Wheeler-Soares* standard should apply in Pennsylvania. Instead, it simply held that the defendant failed under both standards to establish a prima facie case of the Allegheny County District Attorney's discriminatory use of peremptory challenges. In so holding, the court noted:

> The prosecutor's peremptory challenge of one black prospective juror, the first and only venireman to be questioned on individual voir dire, accompanied by opinion evidence as to the practice of some individual assistant district attorneys in past trials, is insufficient under the standard of either *Swain* or of *Wheeler* and *Soares* to raise the inference of improper use of the peremptory challenge by the Commonwealth. Thus, it must be concluded that the trial court erred in finding that appellee had established a prima facie case of discriminatory exclusion of black prospective jurors. *Commonwealth v. Futch*, 492 Pa. at 368, 424 A.2d at 1235.

Despite appellant's extensive effort to prove that the Allegheny County District Attorney utilizes peremptory challenges for discriminatory purposes [1], the *Futch* court found no such discriminatory practice. This is particularly significant in light of the fact that the *Futch* trial occurred one month following appellant's trial; consequently, appellant would have us remand for an evidentiary hearing to review the alleged discriminatory practice of the Allegheny County District Attorney over the same period of time considered in *Futch,* supra. The lower court proceeding in *Futch,* supra, was lengthy and thorough, and the *Futch* court explicitly found no discrimination. We would be remiss, indeed, to remand for yet another hearing on an already-settled issue.

Absent a ruling from our Pennsylvania Supreme Court to the contrary, we are of the opinion that the presumption that a prosecutor is properly exercising his peremptory challenges is overcome only where the defendant demonstrates that the prosecutor, in a number of cases, unjustly excludes blacks from every jury. *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975); *Commonwealth v. Green,* 264 Pa.Super. 472, 400 A.2d 182 (1979); *Commonwealth v. Jones,* 246 Pa.Super. 521, 371 A.2d 957 (1977). Whether the prosecutor discriminated against blacks in the selection of the jury in the instant matter is relevant only in the context of determining the continuous, unjust exclusion over an appreciable period of time. *Green,* supra. It has been settled that the Allegheny County District Attorney does not, in case after case, exclude blacks; therefore, the lower court properly denied an evidentiary hearing.

Next, appellant argues that the prosecution incited the jury to deliberate with fear and bias. Specifically, appellant complains that the prosecutor's reference to "society's victims of crime" during closing argument was an attempt to

---

1. Defense counsel produced eighty-two witnesses, consisting of defense attorneys, former assistant district attorneys from Allegheny County, two trial judges and former criminal defendants.

undermine the presumption of an accused's innocence and deprive him of a fair and impartial trial.

Although prosecutorial misconduct is never countenanced by the courts, it is not proper to order a new trial at every instance of a prosecutor's improper remarks. *Commonwealth v. Smith*, 289 Pa.Super. 356, 433 A.2d 489 (1981). Only those remarks which preclude objective deliberation by implanting bias and hostility for the defendant in the jurors' minds will result in mistrial. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Smith*, supra. We do not find the prosecution's remarks to have risen to that level. Moreover, the objection was sustained and the jury was instructed to disregard the prosecution's reference to victims of crime. Many prejudicial and inciteful remarks are effectively blunted with prompt and complete instructions from the court. *Commonwealth v. Fultz*, 478 Pa. 207, 386 A.2d 513 (1978).

Appellant also contends that it was error not to suppress the picture identifications of appellant as the result of the suggestive nature of the photo arrays. Two days following the incident, a special agent of the Federal Bureau of Investigation displayed the same eight photographs to three clerk-tellers of the Credit Union who were working during the robbery. Appellant's photograph was not among the group of eight, and none of the three clerk-tellers selected the perpetrator's picture.

On March 1, 1979, one month following the incident, the same clerk-tellers individually viewed six photographs, and the three employees each selected appellant's photograph. These same six photographs were displayed to two customers of the Credit Union who were present during the robbery; they too selected appellant's photograph.

According to appellant, these picture identifications were tainted due to the fact that three from the first photo array of eight photographs were among the six photographs in the second array. Presumably, these three photographs, as a result of being dismissed earlier, were certain to be

eliminated upon a second cursory examination. Moreover, two of the remaining three photographs were of men wearing glasses, and five Commonwealth witnesses agreed that the perpetrator did not wear glasses. These facts, according to appellant, unjustly led the witnesses to choose his picture as a result of the suggestive array and not as a result of their independent recollections of the perpetrator at the scene.

Although an out-of-court identification may be suggestive, a subsequent in-court identification of an accused as the perpetrator is admissible provided it has a basis independent of the tainted identification. *U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Connolly,* 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976). The Commonwealth must establish the independent basis for the in-court identification by clear and convincing evidence. *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976). In determining whether the Commonwealth has met this burden, and thereby overcame the illegality of the out-of-court identification, the following criteria are considered: 1) the circumstances under which the witnesses viewed the actual crime; 2) the witnesses' degree of attention; 3) the accuracy of the description prior to the suggestive photo array; 4) the level of certainty in identifying the perpetrator; and 5) the lapse of time between the crime and illegal confrontation. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976).

In light of these criteria, the suggestiveness of the photo array is overcome by the independently-based, in-court identification. Commonwealth witnesses and Credit Union employees, Donna Morrison and Sharon Abrams, observed appellant's full face for a few seconds immediately after he leaped over the counter to the employees' side. Donna Morrison viewed his full face from a distance of one foot. Both women observed appellant remove cash and

checks from three drawers. June Leeds, another clerk-teller, watched appellant during the progress of the robbery. The three women were consistent and reasonably accurate in their identification of appellant as 5′ 2″ to 5′ 6″, having a slight build, light Negro skin, wide nose and freckles and being in his early twenties. They also described him as wearing a tan, waist-length coat and a dark-colored tassel cap. The testimony of Roy Orluk and William Tomko, two United States Steel Co. employees who were transacting business at the scene on January 29, 1981, corroborated the description and characteristics testified to by the three employees.

The totality of the circumstances reveals that the witnesses were accurate in their description of appellant, solid in their convictions, attentive during the robbery and in excellent positions to note important details. These factors overcome any suggestiveness in the photo array. They also overcome the suggestive nature of appellant's appearance at the preliminary hearing in handcuffs and leg shackles. For these reasons, we affirm.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I read *Commonwealth v. Futch*, 492 Pa. 359, 424 A.2d 1231 (1981), differently than the majority does, and I am therefore unable to join that part of its opinion holding that *Futch* is dispositive of the question whether appellant was entitled to a hearing to determine whether the district attorney's office used its peremptory challenges to exclude black jurors.

On voir dire in appellant's case, two of the first twelve jurors selected and one of the first two alternates were apparently black. Appellant contends that the Commonwealth's use of peremptory challenges to strike these three jurors denied him "the right to have any of his peers on the jury." N.T. 2/27/80, 338. Appellant also argues that the

trial court should have granted his request for an evidentiary hearing at which he planned to show "that there is a pattern among the District Attorneys in Allegheny County to remove black people from the juries in a case where there is a black defendant and a white victim." N.T. 2/27/80, 338. *See also* N.T. 3/3/80, 6.

In its opinion supporting its denial of appellant's request for a hearing to show a pattern of discrimination in the use of peremptory challenges by the district attorney's office, the trial court concluded that appellant was not entitled to a hearing because in *Commonwealth v. Futch, supra*, "[o]ur Supreme Court has determined that there was no such violation by the Allegheny County Prosecutors in case after case, for the period of time during which this case came to trial. This case was tried in March, 1980; *Futch* came to trial in April, 1980." Slip op. at 15. Although the majority agrees with the trial court's reading of *Futch*, at 1348, in fact the Supreme Court made no such determination.

In *Futch* the trial court held a hearing in which counsel was permitted to introduce evidence as to the use of peremptory challenges to exclude black jurors. The trial court concluded that the defendant had established a prima facie case of discrimination by showing that some members of the district attorney's office had used peremptory challenges in a racially discriminatory manner. *See Commonwealth v. Futch, supra*, 492 Pa. at 364, 424 A.2d at 1233. In reviewing the trial court's decision, the Supreme Court summarized the evidence and the trial court's ruling on it. However, the Court did not determine, as the majority concludes, that the defendant had not established a pattern of discrimination in the use of peremptory challenges. The Court expressed no view on this question. Instead, in reversing the trial court it held only that the defendant had not established that peremptory challenges had been used in a discriminatory manner "in the jury selection of *his* case." *Id.*, 492 Pa. at 366, 424 A.2d at 1234 (emphasis added).

Upon appellant's request for a hearing to establish systematic discrimination, the Commonwealth noted that it had used all seven of its peremptory challenges, so that whites as well as blacks were removed from the jury panel. In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court said:

> In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court.

*Id.* at 221, 85 S.Ct. at 836.

*See also Commonwealth v. Futch, supra,* 492 Pa. at 365, 424 A.2d at 1223; *Commonwealth v. Martin,* 461 Pa. 289, 297, 336 A.2d 290, 294 (1975). The Commonwealth does not dispute appellant's assertion that all blacks were removed from the jury panel. This fact alone, of course, did not establish discrimination; under *Swain* and *Futch,* the presumption is that in removing blacks, the Commonwealth was acting properly. However, appellant should have been granted the hearing he requested so that he could offer evidence to overcome the presumption. To be sure, the defendant in *Futch* had only recently made the same allegation of discrimination as appellant was making. However, because a defendant in one case fails to prove something is no reason why another defendant in another case may not try to prove it. If the trial court fears time-consuming and unnecessary repetition of testimony, it may require offers of proof, or stipulations may be resorted to. Here, the trial court simply denied appellant the opportunity to offer evidence; nothing in *Futch* supports that denial.

The judgment of sentence should be reversed and a new trial granted.