562 A.2d 338

**COMMONWEALTH of Pennsylvania**

v.

**Edward JACKSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 20, 1988.

Filed July 12, 1989.

34

Peter Rosalsky, Asst. Public Defender, Philadelphia, for appellant.

Maxine Stotland, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BECK, Judge:

The issue is whether the prosecutor at appellant's trial for robbery violated the equal protection clause of the federal constitution by using peremptory challenges to exclude members of the appellant's race from the trial jury. Appellant contends that under the legal standard articulated by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the prosecutor failed to rebut a prima facie showing that the Commonwealth's peremptory challenges had been used for a racially discriminatory purpose. We conclude that appellant's claim is without merit and we affirm his judgment of sentence.

I.

This is an appeal by Edward Jackson from a judgment of sentence imposed by the Court of Common Pleas of Philadelphia County. Appellant is a black man who was arrested in connection with an armed robbery. He was charged with robbery, possession of an instrument of crime, and conspiracy. He invoked his right to trial by jury.

During voir dire, the prosecution and the defense were each permitted seven peremptory challenges. The prosecu-

tor used all seven of his challenges to remove black prospective jurors. Immediately after the prosecution's seventh strike, defense counsel objected on the grounds that the prosecutor had violated his client's right to the equal protection of the law by challenging jurors in a racially discriminatory manner. The court denied counsel's motion to impanel a new jury and voir dire resumed. The final petit jury consisted of nine white jurors, one oriental juror, and two black jurors, as well as one white alternate and one black alternate.

At trial, the Commonwealth called three witnesses to the stand. Rodney Harmon, a black man, testified that the appellant and an accomplice had held him up at gun point on July 21, 1986 at the intersection of 49th Street and Fairmount Avenue in Philadelphia. Benjamin Walton, a black police sergeant, testified that he observed the appellant walking with a short black man at a location near the crime scene, and that he apprehended appellant while the other man escaped. Leslie Byrd, another black police officer, testified that he brought Mr. Harmon to the location where the appellant had been detained, and that Mr. Harmon identified the appellant as his attacker. The defense attempted to cast doubt on the reliability of Mr. Harmon's identification. On January 12, 1987, the jury returned a verdict of not guilty on the conspiracy charge and of guilty on the robbery and possession of an instrument of crime charges.

Appellant filed timely post-verdict motions in which he again asserted that the prosecutor had practiced racial discrimination during the jury selection process. After scheduling a post-trial hearing on the equal protection claim, the court denied the motions. On September 3, 1987, appellant received a total sentence of five to ten years imprisonment.

Appellant filed a timely appeal from his judgment of sentence in which he again raised the equal protection issue, and the case was certified for en banc review. After careful consideration, we affirm.

## II.

The ultimate goal of the jury selection process is to ensure that the defendant is tried by a fair and impartial jury of his peers. In order to further this goal, two methods have been devised to eliminate unsuitable jurors—the challenge for cause and the peremptory challenge. The Commonwealth and defense counsel may make an unlimited number of challenges for cause. Challenges for cause, however, are only granted where: 1) a prospective juror's conduct or responses during voir dire demonstrate a likelihood of prejudice; or 2) the prospective juror has such a close familial, financial, or situational relationship with parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice. *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 158, 535 A.2d 91, 98 (1987) (en banc). Both the Commonwealth and defense counsel are also permitted a limited number of peremptory challenges.[1] The primary function of the peremptory challenge is to allow parties to strike prospective jurors who they have good reason to believe might be biased but who are not so

1. At common law, only the defendant was permitted peremptory challenges. The Commonwealth, however, could ask any prospective juror to "stand aside" until the entire venire panel had been questioned and the defendant had exercised his peremptory challenges. Only if a deficiency of jurors remained after the whole venire panel had been exhausted were the venirepersons who had been asked to "stand aside" recalled for jury service. *See Swain v. Alabama*, 380 U.S. 202 212–13, 85 S.Ct. 824, 831–32, 13 L.Ed.2d 759 (1965).

In Pennsylvania, the right to exercise peremptory challenges was first extended to the Commonwealth by an 1860 statute which allowed four peremptory challenges to the prosecution and twenty peremptory challenges to the defense in trials for certain serious felonies. Act of 1860, March 31, P.L. 427 §§ 36–37. *See Warren v. Commonwealth*, 37 Pa. 45 (1860) (finding statute constitutional). In 1901, the legislature equalized the number of peremptory challenges afforded the Commonwealth and the defense and abolished the traditional practice of "standing aside" jurors. Act of 1901, March 6, P.L. 16, § 1; Act of 1901, July 9, P.L. 629, § 1, Pa.Stat.Ann. tit. 19 § 811 (Purdon 1964).

The right to exercise peremptory challenges is now guaranteed by the Pennsylvania Rules of Criminal Procedure. The instant case is controlled by Rule 1126(a)(2) which states: "In trials involving a non-capital felony and where there is only one defendant, the Commonwealth and the defendant shall each be entitled to (7) peremptory challenges."

clearly and obviously partial that they could otherwise be excluded from the panel. *See Hayes v. Missouri,* 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1888).

■ Many legal scholars have contended that the right to peremptory challenges is among the most important safeguards of the fairness of a criminal trial. *See Swain v. Alabama,* 380 U.S. 202, 218–221, 85 S.Ct. 824, 834–36, 13 L.Ed.2d 759 (1965). Unfortunately, however, the availability of these challenges creates a danger that an element of racial discrimination will be introduced into criminal proceedings. For example, a prosecutor might choose to strike a prospective juror solely because she is black and the defendant is also black. This conduct denies both the prospective juror and the defendant the equal protection of the law guaranteed by the fourteenth amendment. *See Batson v. Kentucky,* 476 U.S. at 85–89, 106 S.Ct. at 1716–19. The prospective juror is disadvantaged on the basis of race because she is denied the same opportunity as a white person to participate in the criminal justice system as a finder of fact. The defendant is disadvantaged on the basis of race because she is denied the same opportunity as a white person to be tried by a jury from which members of her own racial group have not been purposefully excluded. *Cf. Strauder v. West Virginia,* 100 U.S. 303, 309, 25 L.Ed. 664 (1880) ("It is not easy to comprehend how it can be said that while every white man is entitled to a jury selected ... without discrimination against his color, and a negro is not, the latter is equally protected by the law with the former.")

During the past quarter century, appellate courts have struggled with the problem of how to preserve the right to peremptory challenges while at the same time minimizing the potential for racial discrimination. In *Swain v. Alabama, supra,* the United States Supreme Court first recognized that the racially motivated use of peremptory challenges could rise to the level of a constitutional violation. Yet, the *Swain* Court's principal concern was to ensure that the prosecution's jury selection practices would not be unduly restricted. The Court emphasized that "the presump-

tion in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury" 380 U.S. at 222, 85 S.Ct. at 837. The Court further held that this presumption could only be overcome by evidence that the prosecutor systematically excluded members of a particular racial group from juries "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be...." 380 U.S. at 223, 85 S.Ct. at 837. This evidentiary standard was extensively criticized since it imposed a virtually insurmountable burden of proof on defendants and prevented courts from remedying nearly all of the equal protection violations which occurred during the voir dire process. *See, e.g., Commonwealth v. Martin,* 461 Pa. 289, 298–300, 336 A.2d 290, 294–96 (1975) (Nix, J., dissenting).

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court reconsidered the *Swain* decision, and developed a new procedure for evaluating challenges to the prosecutions' use of peremptory strikes. Under *Batson,* a defendant may rely exclusively on the facts of his own case when proving a constitutional violation. In order to prevail, the defendant must initially establish a prima facie case of discrimination.

To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in selection of the venire, raises the necessary inference of discrimination.

476 U.S. at 96–97, 106 S.Ct. at 1723 (citations omitted). *See also Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334, 345 (1989).

■ Thus, a prima facie case of discrimination has three elements: 1) the defendant's membership in a cognizable racial group; 2) the prosecutor's use of peremptory strikes to exclude members of that group; and 3) an inference arising under the totality of the circumstances that the prosecutor used the strikes to exclude venirepersons on account of race. *See Commonwealth v. Abu–Jamal,* 555 A.2d 846, 850 (Pa.1989).[2]

■ If a defendant makes a prima facie showing of discrimination, the burden then shifts to the prosecution to justify his decision to strike minority jurors. "The prosecutor must therefore articulate a neutral explanation related to the particular case to be tried." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724 (footnote omitted). The trial judge must then make the ultimate determination of whether the defendant has established purposeful discrimination. *Id.*

In the instant case, the trial judge ruled that appellant Jackson had presented a prima facie case under *Batson.* The court then concluded that the prosecution had successfully rebutted this prima facie case by providing a neutral explanation for its pattern of strikes. Appellant contends that the prosecutor did not provide an adequate neutral explanation. On the other hand, the Commonwealth asserts in its brief as appellee that the prosecutor's neutral explanation was legally sufficient. The Commonwealth also notes that as an appellate court we have the power to affirm a judgment of sentence where the trial court reached a correct result for the wrong reason. *See Commonwealth v. Allem,* 367 Pa.Super. 173, 178, 532 A.2d 845, 848 (1987). The Commonwealth therefore urges that we uphold the

2. The statement that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate'" 476 U.S. at 97, 106 S.Ct. at 1723, is not an independent element of the prima facie case but is rather a general observation upon which defendants may rely when attempting to establish an inference of discrimination.

conviction on the ground that appellant failed to establish a prima facie case of discrimination without reaching the neutral explanation issue.

We shall first consider whether the trial court erred by finding a prima facie case. We will then proceed to address the adequacy of the prosecutor's explanation for his peremptory challenges.

### III.

■ The trial court stated in its opinion:

We have reached the conclusion, after a study of this record, that the defendant, who is a member of the black race, has established that the action of the prosecution in peremptorily challenging seven potential jurors, all of whom were black, has made out a prima facie case of purposeful discrimination in the selection of the jury panel.

Trial Court Op. at 3. The Commonwealth contends that the trial court committed an error of law by reaching this conclusion. We do not agree.

*Batson* sets forth two clear preconditions for a finding of a prima facie case: the defendant's membership in a cognizable racial group, and the exclusion of other members of that racial group from the jury. Beyond this, *Batson* allows trial judges a fair degree of latitude in assessing whether a prima facie case has been established. The *Batson* Court explained:

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in a particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the

prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. 476 U.S. at 96–97, 106 S.Ct. at 1723.

Thus, the precise question before us is whether the trial court abused its discretion under *Batson* by finding a prima facie case. We cannot say that the court abused its discretion, especially since the prosecutor exercised all seven of his peremptory challenges against blacks. A jurist could reasonably conclude that this pattern of challenges raises a sufficient inference of discrimination to justify shifting the burden of proof to the prosecution. Accordingly, the trial court's finding should not be disturbed.

In reaching this conclusion, we do not adopt a per se rule that any particular number of strikes against minority venirepersons must invariably give rise to a prima facie case. *See United States v. Sangineto–Miranda,* 859 F.2d 1501, 1521 (6th Cir.1988) (rejecting per se rule); *United States v. Clemons,* 843 F.2d 741 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988) (similar reasoning). We recognize that in some instances, courts have found that notwithstanding a significant number of strikes against black venirepersons, no prima facie case had been established under the totality of the circumstances. *See, e.g., United States v. Sangineto–Miranda, supra* (no prima facie case where all peremptory challenges used against blacks); *Commonwealth v. Abu–Jamal, supra,* at 850 (no prima facie case where prosecutor who was afforded twenty peremptory challenges struck eight blacks and seven whites); *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988) (no prima facie case where prosecutor who was afforded twenty peremptory challenges struck twelve blacks and two whites). In these cases, an appellate court denied relief under *Batson* after the trial court had first held that there was no prima facie case or after the trial court had failed to address the issue.[3] The Common-

3. In *Commonwealth v. Hardcastle, supra,* the defendant specifically alleged after voir dire and before trial that the prosecution had discriminated on the basis of race by exercising twelve of his twenty

wealth has not alerted us to any appellate decision which has overturned an explicit trial court finding of a prima facie case. Moreover, we are not persuaded that such a disposition is appropriate in the case sub judice.

The Commonwealth argues that the appellant could not satisfy his initial burden of proving a prima facie case for two reasons. First, the appellant is a black man who was arrested by black police officers and accused of committing a crime against another black man. Second, two blacks served on the jury which convicted appellant of this crime. The Commonwealth's view is that one may not infer that the prosecutor engaged in racial discrimination in light of: 1) the common racial background of the defendant and the prosecution witnesses; and 2) the racial integration of the petit jury. We shall consider the impact of each of these factors on the analysis of a *Batson* claim.

### A.

■ We agree with the Commonwealth that the potential for misuse of peremptory challenges is greatest when a defendant is accused of attacking an individual of a different race. In such a case, the prosecutor has a special incentive to select jurors who are of the same racial background as the victim. For example, if a black man stands accused of killing a white man, a white juror may be likely to identify with the victim. Accordingly, a trial judge

peremptory challenges against black jurors. This objection was denied. Sometime after judgment of sentence was imposed, the United States Supreme Court announced the *Batson* decision. On appeal from the judgment of sentence, the Pennsylvania Supreme Court found that defendant had preserved a *Batson* challenge to his conviction, and that "the trial court did not rule on this issue." 519 Pa. at 244, 546 A.2d at 1104. The Court therefore conducted the initial inquiry as to whether the defendant had established a prima facie case of discrimination, and concluded that he had not. However, the Court stressed that under ordinary circumstances, "[i]n deciding whether the defendant has made the requisite showing, the *trial court* should consider all relevant circumstances." *Id.* (citing *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 and supplying emphasis). *Cf. Commonwealth v. Abu–Jamal, supra* (Pennsylvania Supreme Court conducted initial review of *Batson* challenge where *Batson* was decided while case was pending on direct appeal).

should examine the use of peremptory challenges with particular care whenever the trial involves an element of interracial conflict.

This does not mean, however, that the absence of interracial conflict guarantees that peremptory challenges will be exercised for proper reasons. In *Swain v. Alabama*, the United States Supreme Court recognized the problem of "the prosecutor in a county [who], in case after case, and whoever the defendant or the victim may be, is responsible for the removal of Negroes...." 380 U.S. at 223, 85 S.Ct. at 837. *See also Batson*, 476 U.S. at 103–04, 106 S.Ct. at 1726–27 (Marshall, J., concurring) (citing statistics on systematic exclusion of blacks from juries). One motive for such conduct is the underlying belief that a white juror would be more likely than a black juror to assume that blacks frequently commit crimes and that any black who is accused of a crime is probably guilty. Another motive for consistently striking blacks is the concern reflected in a training manual prepared by the Dallas County District Attorney's Office: "You are not looking for any member of a minority group which may subject him to oppression— they almost always empathize with the accused." Acker, *Exercising Peremptory Challenges After Batson*, 24 Criminal Law Bulletin 187, 203 n. 67 (1988) (quoting Texas Observer, May 11, 1973 at 65). Whatever the motive, the exclusion of black venirepersons solely on account of race is a violation of the equal protection clause that trial courts must be prepared to remedy.

■ We conclude that even where the defendant and the victim are both black, some prosecutors may attempt to minimize the number of blacks who are selected as jurors. Thus, the fact that a defendant is a member of the same racial group as the Commonwealth's witnesses is in no way inconsistent with a finding of a prima facie case.

## B.

■ We next consider the significance of the ultimate racial configuration of the petit jury. In the instant case,

the record indicates that two black jurors were selected before the assistant district attorney had exhausted all of his peremptory challenges. The fact that the prosecutor did not take advantage of his opportunity to strike these jurors is evidence that he did not discriminate on the basis of race. *See United States v. Sangineto–Miranda,* 859 F.2d at 1522 ("If there are minority members on the jury but the [prosecution] did not use all its peremptory challenges, that would be a factor tending to refute discrimination.") This evidence, however, is not conclusive.

There are several reasons why a prosecutor may permit one or two blacks to sit on a jury, but may use her peremptory challenges to discriminate against the remaining blacks in the venire pool. First, the prosecutor may try to deflect criticism of a discriminatory jury selection strategy by allowing token minority representation on the jury. Alternatively, the prosecutor may strive to eliminate nearly all black venirepersons, but may make an exception in favor of a subgroup of black venirepersons who are viewed as sympathetic to the Commonwealth, e.g., black police officers, or black senior citizens who have been victims of violent crimes. Furthermore, in urban areas where the total number of blacks in the venire pool may far exceed the number of peremptory strikes, it is sometimes impossible to exclude every black who is reached on voir dire. In such a situation, the biased prosecutor may initially tolerate a few black jurors but might then try to limit the overall black presence on the jury.

In *United States v. Clemons,* the Third Circuit recently noted:

> Striking a single black juror could constitute a prima facie case even when blacks ultimately sit on the panel and even when valid reasons exist for striking other blacks.... Similarly, we doubt the significance of including a single black on a panel if, at the same time, the government used most of its peremptory challenges ... to strike blacks with backgrounds similar to the white jurors ultimately selected....

In view of the various jury selection practices and the unique racial makeup of each judicial district, we are unwilling to depart from *Batson*'s reliance on the trial judge's expertise in assessing a prima facie case. Although it may be easier to establish a prima facie case when all blacks are excluded from a jury, or when one or two blacks are excluded from a panel in a district with a low black population, we cannot say the conclusion is automatic.... *Nor can we conclude that the inclusion of blacks on the jury bars a prima facie case, especially where other facts and circumstances may constitute an inference of prosecutorial discrimination in the selection process.*

843 F.2d at 747–48 (footnote and citations omitted) (emphasis supplied). We agree. *Cf. Commonwealth v. Dinwiddie*, 373 Pa.Super. 596, 542 A.2d 102 (1988) (affirming finding of prima facie case where two blacks served on jury).

## C.

In summary, we find that the race of the victim, the race of the prosecution witnesses and the race of the petit jurors are relevant factors which a trial judge is free to consider when evaluating a *Batson* claim. Indeed, in the case sub judice, the trial judge relied in part on these factors when he concluded that appellant's prima facie case had been successfully rebutted. *See* n. 9, *infra.* Relief under *Batson*, however, is not limited to instances in which a black defendant is accused of attacking a white victim or is tried by an all white jury. Any per se rule that would limit a finding of a prima facie case to such circumstances would insulate a significant number of potential equal protection clause violations from judicial review.

We are aware that some prior panels of this court have stressed that the victim was black or that the jury included some blacks when affirming trial court decisions that denied a *Batson* challenge. *See Commonwealth v. Monroe*, 373 Pa.Super. 618, 542 A.2d 113 (1988); *Commonwealth v.*

*Long,* 367 Pa.Super. 190, 532 A.2d 853 (1987); *Common-wealth v. McKendrick,* 356 Pa.Super. 64, 514 A.2d 144 (1986). The result in those cases is not contrary to the result we reach today. The instant case is distinguished by the fact that the trial judge made an explicit finding that the defendant had made a prima facie showing of discrimination. As Justice Houston of the Alabama Supreme Court noted when discussing an appeal with a similar fact pattern to that of the case sub judice:

> In this case the defendant was black, the victim was black, and the "eye witness" whose testimony was the foundation stone of the state's case was black; and the state did not peremptorily challenge all blacks.... This is where the trial court must use its discretion in determining, after considering *all* relevant circumstances, whether the state's use of peremptory challenges created a "prima facie case of discrimination against black jurors." *Batson,* 476 U.S., at 97, 106 S.Ct. at 1728. The trial court's decision must not be reversed unless it is clearly erroneous.

*Ex parte Branch,* 526 So.2d 609, 633 (1987) (Houston, J., dissenting).[4]

A trial court should consider the totality of the circumstances when evaluating a *Batson* challenge.[5] The

---

**4.** In *Ex parte Branch, supra,* the trial court found that the defendant's prima facie case had been rebutted by the prosecutor's neutral explanation for his pattern of strikes. The defendant appealed, and the Alabama Supreme Court remanded to the trial court for further consideration of the adequacy of the neutral explanation. Although Justice Houston dissented from the decision to remand, his discussion of the prima facie case requirement is consistent with the majority opinion.

**5.** Factors which may be relevant to a determination as to whether the defendant has established a prima facie case include not only the race of the victim, the witnesses, and the seated jurors, but also: 1) the number of strikes used against minorities, 2) the percentage of minorities on the venire panel eliminated by peremptory strikes; 3) the past conduct of the prosecutor in challenging members of minority groups at other trials; 4) the type and manner of the prosecutor's statements and questions during voir dire; and 5) similarities and differences between challenged and unchallenged venire panel members. Warning signs of possible discrimination include: 1) evidence that the use

court should be alert to the possibility of *Batson* violations whenever the prosecution has repeatedly stricken members of the defendant's racial group. Invidious manipulation of the petit jury may occur in a variety of factual contexts. Moreover, over the long run, the failure to adequately investigate plausible claims of racial discrimination would have negative consequences for society as a whole. As the United States Supreme Court stated in *Batson:*

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in our system of justice.

476 U.S. at 87, 106 S.Ct. at 1718. On the other hand, public confidence in our system of justice is enhanced when prosecutors are afforded an opportunity to demonstrate that racial considerations played no part in their exercise of peremptory challenges.

We hold that the court did not abuse its discretion by finding a prima facie case of discrimination. *Cf. Ex parte Branch, supra* (finding prima facie case where victim was black and one black served on jury); *Stanley v. State,* 313 Md. 50, 72, 542 A.2d 1267, 1278 (1988) (finding prima facie case where victim was black and three blacks served on jury).

## IV.

Under *Batson,* "Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors." 476 U.S. at 97, 106 S.Ct. at 1723. We must now consider

of peremptory challenges had a disparate impact on minority venire panel members; 2) evidence that challenged venire panel members had no characteristic in common except for race; 3) evidence that minority venire panel members were questioned in a manner that was especially likely to elicit disqualifying responses; and 4) evidence that minority venire panel members were struck while white panel members who had similar characteristics were retained. *See Ex parte Branch,* 526 So.2d at 622–23 (collecting cases); Acker, *supra,* 24 Criminal Law Bulletin at 197–201 (collecting cases).

whether the trial court erred by determining that the prosecutor had met his burden of proof.

On January 9, 1987, during voir dire, defense counsel raised a timely objection to the prosecution's use of peremptory challenges. Defense counsel stated for the record the name, juror number, and race of each of the seven venirepersons who had been stricken by the prosecution. The prosecutor responded by asserting that he clearly did not have a discriminatory motive in light of the fact that the victim was black and that he would be calling black witnesses. He also said, "I have reasons for striking off the people that I struck that don't have anything to do with race." N.T. Jan. 9, 1987 at 2.85. The court accepted these assurances without requiring any further explanation and the case proceeded to trial.

After appellant was convicted, the court reviewed postverdict motions and scheduled a hearing for May 6, 1987 to receive further evidence relating to the the exercise of peremptory challenges. At the hearing, the prosecutor appeared as a witness and testified under oath that at no time during his professional career had he ever discriminated on the basis of race. Although he could no longer remember many of the details of the voir dire proceeding at appellant's trial, he also provided a brief explanation for each of his peremptory challenges.

At the conclusion of this testimony, the trial court scheduled oral argument for August 25, 1987, and ordered both parties to submit briefs on the *Batson* issue. At oral argument, defense counsel attempted to demonstrate that the prosecutor's explanations for his peremptory challenges were pretextual. The trial court ultimately concluded that the prosecutor had successfully rebutted the appellant's prima facie case of discrimination.

### A.

Before discussing the merits of the trial court's ruling, a few words about procedure are in order. In this case, the prosecutor was not asked to offer a neutral explanation for

his strikes until nearly four months after voir dire. Defense counsel did not have an opportunity to argue that this explanation was pretextual for an additional three and a half months. Such extensive delays, in the instant case over seven months, are impediments to the sound resolution of a *Batson* claim. As time elapses, it becomes increasingly difficult for the prosecutor to recall with precision her reasons for striking or not striking members of the venire panel. Moreover, the trial judge may have difficulty evaluating the reasons supplied if the demeanor and responses of venire panel members are not fresh in her mind.

The precise manner in which a *Batson* claim is to be handled must be entrusted to the discretion of the trial court. However, where a defendant has raised a timely *Batson* challenge and has established a prima facie case of discrimination, we believe that the interests of justice are ordinarily best served by requiring the prosecutor to come forward with reasons for his peremptory challenges at some time before the Commonwealth presents its case in chief.[6] The prosecutor should articulate the reasons for her strikes, and the defense attorney should then have an opportunity to respond with any arguments as to why these reasons are factually unfounded or legally insufficient. *See United States v. Thompson*, 827 F.2d 1254 (9th Cir.1987). Where helpful, the prosecutor should reply to the defense arguments and offer any needed clarification of her neutral explanation. The trial judge should then promptly rule on the *Batson* claim.[7]

In the instant case, it is likely that the judge originally concluded that the defense had not established a prima facie

6. We are aware that in some counties, a judge is often not present in the courtroom during voir dire. Nothing in this opinion requires a judge to be present for voir dire. However, it is advisable for a judge to dispose of a *Batson* claim before the Commonwealth presents its case in chief so as to avoid the need for a new trial if the claim is meritorious.

7. We note that the denial of a *Batson* claim is not immediately appealable as a final order. In most instances, appellate resolution of the matter must be deferred pending appeal from a judgment of sentence.

case, and then changed his mind after examining post-verdict motions. We commend the trial judge for his willingness to reexamine his initial decision. However, the fact that a judge may reconsider his decision is one reason why in a close case it is prudent for a court to err on the side of finding a prima facie case and requiring a neutral explanation before the Commonwealth presents evidence at trial.[8] In this way, the judge can create a record which will facilitate his own post-verdict motions review, as well as the review of the appellate courts.

### B.

We next consider our standard of review of the trial court's decision on the merits. The opinion of the trial court states:

> [The prosecutor] impressed me as a thoroughly credible witness, and I accept his testimony without reservation. I am completely satisfied that he has given a neutral explanation why the race of the prospective jurors played no part in the exercise of his peremptory challenges, and I so conclude.

Trial Court Op. at 6.[9]

Our scope of review of the trial court's finding is restricted. In *Batson*, the Court referred in a footnote to appellate review of a trial court's conclusion that the prosecutor had rebutted a prima facie case of discrimination. The Court stated that:

> "[A] finding of intentional discrimination is a finding of fact" entitled to appropriate deference by a reviewing

8. Of course, the trial judge should promptly deny any *Batson* claim which is merely designed to harass the prosecution or delay trial.

9. The court also noted that the danger of racial discrimination was reduced in this case inasmuch as the Commonwealth witnesses and some members of the jury were black. These factors are relevant to the neutral explanation phase of a *Batson* inquiry, as well as to the prima facie case phase of a *Batson* inquiry, since they tend to support the prosecutor's assertion that his reasons for striking prospective jurors were unrelated to race. However, for the reasons stated in Section III of this opinion, these factors should not be viewed as conclusively establishing an absence of racial discrimination.

court. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 84 L.Ed.2d 518, 105 S.Ct. 1504 [1511], (1985). Since the trial court's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. *Id.,* at 575–576, 84 L.Ed.2d 518, 105 S.Ct. 1504 [1512].

476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Thus, an appellate court will reverse a trial court's finding of no discrimination only if that finding is clearly erroneous. *United States v. Tindle,* 860 F.2d 125, 129 (4th Cir.1988), *cert. denied,* ––– U.S. –––, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (U.S.1989); *United States v. Mathews,* 803 F.2d 325, 330 (7th Cir.1986), *rev'd on other grounds,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Ex parte Branch,* 526 So.2d at 625.

 This is not to say that the trial court's discretion is unlimited. *Whenever* a trial judge determines that the defendant has established a prima facie case of discrimination, the Commonwealth must come forward with a neutral explanation for its pattern of strikes. *See Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723. Moreover, in order to qualify as legally sufficient, a prosecutor's explanation must meet certain minimal requirements.

First, the prosecutor's proffered explanation must be "clear and reasonably specific." *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20. A prosecutor "may not rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' " *Id.* 476 U.S. at 98, 106 S.Ct. at 1724 (citation omitted). Instead, the prosecutor should independently justify each strike that he exercised against a member of the defendant's minority group. *Cf. Commonwealth v. Dinwiddie,* 373 Pa.Super. 596, 542 A.2d 102 (1988), *allocatur granted,* 521 Pa. 609, 557 A.2d 341 (1989) (ordering new trial where prosecutor declined to enumerate specific reasons for peremptory challenges).

Second, the prosecutor's proffered explanation must consist of " 'legitimate reasons' for exercising the challenges." *Batson*, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20. This is a broad category. "[T]he prosecutor's explanation need not rise to a level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. " '[T]here are any number or bases' on which a prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause." *Id.*, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20 (citation omitted). The chief example of an *illegitimate* reason for exercising a challenge would be to exclude a prospective juror because of her racial background.

> [T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or on his intuitive judgment—that they would be partial to the defendant because of their shared race. Just as the Equal Protection Clause forbids the States to exclude blacks from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black.

*Id.* at 97, 106 S.Ct. at 1723.

Third, the prosecutor's proffered explanation must be rejected if it is pretextual. *See, e.g., Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987); *Commonwealth v. Jones,* 374 Pa.Super. 493, 543 A.2d 579 (1988), *allocatur granted,* 521 Pa. 610, 557 A.2d 342 (1989). An explanation which at first blush would appear to be clear, specific, and legitimate may be exposed as a pretext for racial discrimination when considered in light of the entire voir dire proceeding. *See United States v. Thompson,* 827 F.2d at 1260. However, as we recently noted in *Commonwealth v. Lloyd,* "the primary responsibility for assessing the genuineness of a prosecutor's reasons is vested in the trial court...." 376

Pa.Super. 188, 198, 545 A.2d 890, 895 (1988). Only where the trial judge clearly abused his discretion by accepting an explanation which is "not supported by the record" or which "appear[s] to be unreasonable or arbitrary in the face of clear evidence to the contrary" will we substitute our judgment for that of the trial court. *Id.* Any other policy would be inconsistent with the great deference owed to the trial court's credibility determinations. *See Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21 (quoted *supra*).

## C.

In the case sub judice, the prosecutor stated his reasons for striking prospective jurors on the record at the post-verdict motions hearing. N.T. May 6, 1987 at 12–14. We find that these reasons were reasonably specific and were not obviously illegitimate. The question of whether this explanation should be deemed to be pretextual is more difficult. We conclude, however, that under all the facts of this case, the trial court's decision to accept these reasons as a bona fide neutral explanation was not clearly erroneous.

During voir dire, the assistant district attorney struck seven black individuals: Morris E.; Luther K.; Charles J.; Eric P.; Anthony W.; Sheila J.; and Geraldine W. His reasons for striking these individuals fall into four categories.

First, the prosecutor struck Morris E. because his uncle had been arrested.

I challenged a person who during the questioning ... stated that he knew somebody that had been arrested. I think he stated it was his uncle, and he had been sitting on the porch with his uncle and he made a comment, "Well, I guess it's illegal to sit on the porch," the implications being that he might have ... had negative feelings toward the police, based on my perception that he believed that his uncle had been arrested for no reason, just for sitting on the porch.

The basis for this challenge was clearly proper. Appellant does not object to this peremptory challenge.

■ Second, the prosecutor struck Luther K. because he appeared to be uncooperative and hostile at the time of voir dire.

I exercised a peremptory challenge on one person who, it was basically what you would call body language. I can recall it was individual questioning of the jurors. They would come and sit in the jury box[.] I believe he had dark glasses on, and he was kind of sitting with his arm draped over, and I just got very negative feelings during my questioning of this individual. And even during [defense counsel's] questioning of him. Call it body language, if you will.

Q. You are indicating, for the record, you are slumped to the left side with your arm draped over the railing of the witness-box.

A. Correct.

Appellant contends that a prosecutor's impression of a prospective juror's demeanor is not a proper reason for exercising a peremptory challenge. We do not agree. The manner in which a venireperson dresses, his facial expressions, his tone of voice, and his posture all provide relevant information concerning his attitude toward the court system and his ability to serve as a fair and impartial juror. Both district attorneys and defense counsel routinely base their trial selection strategy in part on such physical cues. In this case, the prosecutor noted for the record those aspects of Luther K.'s conduct which called into question his willingness to be serious and attentive throughout the trial. We find that the prosecutor's explanation for striking Luther K. was legally sufficient. *Cf. United States v. Garrison*, 849 F.2d 103, 106 (4th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988) (prosecutor may strike individual perceived as inattentive); *United States v. Forbes*, 816 F.2d 1006, 1009 (5th Cir.1987) (prosecutor may strike individual perceived as hostile).

We recognize that a reference to a prospective juror's "body language" may mask a decision to exercise a peremptory challenge solely on the basis of race. A trial judge

should not uncritically accept this or any other proffered explanation for a peremptory challenge. Instead, the judge should assess each proffered explanation in light of her independent recollection of the demeanor and responses of the venire panel members. As an appellate court, we must ordinarily defer to the trial court's evaluation since the trial judge had a direct opportunity to observe the voir dire process. Accordingly, we will accept the prosecutor's statement as an accurate summary of his reasons for striking this particular prospective juror.

 Third, the prosecutor struck Charles J. because of his extensive employment-related contact with Philadelphia police officers.

I challenged an individual who was employed as a custodian at a state police barracks. I challenged that individual because [of] my belief that his contact with the police may have been such [that] he might have been privy to, you know, what might have been termed "lockerroom banter", where he may hear police officers talking about cases. And I thought that might have had a negative impact.

Appellant notes that Charles J. stated on voir dire that he could fairly evaluate all of the evidence. Appellant further notes that the Commonwealth did not affirmatively establish that Charles J. had in fact been exposed to "lockerroom banter" which had prejudiced him against police witnesses. However, a peremptory challenge need not be supported by the same quantum of proof as would be necessary to justify a challenge for cause. By virtue of his employment, Charles J. may have overheard policemen expressing cynical attitudes toward the criminal justice system. He may also have overheard gossip concerning instances in which policemen have allegedly testified with something less than full candor. Since the Commonwealth's case was based in large part on the testimony of police officers, the trial judge did not clearly abuse his discretion by accepting the explanation for this strike.

58

■ Finally, the prosecutor struck four prospective jurors—Anthony W., Sheila J., Eric P. and Geraldine W.—because of their familiarity with the area surrounding 49th Street and Fairmount Avenue in Philadelphia. This is the location where the crime took place.

> The rest of the peremptory challenges that I exercised were individuals who, based on my recollection, had a familiarity with the location where this incident was alleged to have taken place. Either that they knew the area, they lived in the area or had friends in the area. My belief was that in a case where I felt it was a strong case, it was an identification issue, as I perceived it, I just felt that if a police officer or if the complaining witness would have testified with regard to having something incorrect with regard to distance or street names, that they might have drawn the jury's attention away from what I felt was otherwise a strong case.

> So I was trying to see that jurors who said that they had no familiarity with the location of the particular area where the robbery was alleged to have taken place [were seated].

Appellant maintains that this statement is clearly pretextual. He emphasizes that the prosecutor failed to strike Bruce C., Herbert M. and Shelita B.—three other prospective jurors who were also acquainted with the same vicinity.[10] However, the prosecutor could have reasonably concluded that these three venire panel members would not have been likely to focus on neighborhood street names and geography. Bruce C. had relocated to Philadelphia from Buffalo, New York three years before the trial. When asked if he knew the area of 49th Street and Fairmount Avenue, he responded "Roughly, yes." N.T. Jan. 8, 1987 at

10. Prior to argument on the post-verdict motions, defense counsel filed an affidavit with the court in which he swore that based upon his recollection Bruce C. was Caucasian. Since the Commonwealth did not contest this point, we will assume that Bruce C. was Caucasian for purposes of our review. We note, however, that defense counsel has never represented that either Herbert M. or Shelita B. were Caucasian. Nor does the record reveal whether Herbert M. and Shelita B. were black or white.

92. He had never lived in or about the area. Herbert M. said that he had lived in the area, but at a time twenty-five or thirty years before trial. N.T. Jan. 8, 1987 at 118. Shelita B. said only that she knew the area "[v]aguely". N.T. Jan. 9, 1987 at 2.33.

On the other hand, the voir dire transcript indicates that the four challenged individuals currently had friends who lived in the area or had visited the area in recent years. Anthony W. testified that he had friends in the area and goes there "almost every other night." N.T. Jan. 9, 1987 at 2.63. Sheila J. testified that she knew the area by "[p]assing through." N.T. Jan. 8, 1987 at 133. Eric P. testified that he was familiar with the area and that he knew people who lived there. N.T. Jan. 9, 1987 at 2.50. Geraldine W. testified that she goes shopping in the area. N.T. Jan. 8, 1987 at 136. Striking these four people was consistent with the prosecutor's strategy of eliminating prospective jurors who might have had fresh knowledge of the layout of the neighborhood streets.

Appellant cites *Commonwealth v. Jones*, 374 Pa.Super. 493, 543 A.2d 579 (1988), *allocatur granted*, 521 Pa. 610, 557 A.2d 342 (1989), in support of his pretext argument, but his reliance on that case in misplaced. In *Jones*, the assistant district attorney ostensibly challenged a black woman because she lived near a potential alibi witness. However, the assistant district attorney failed to strike a white man who lived even closer to the potential alibi witness than the black woman. During post-verdict motions review, the trial court concluded that there was no significant distinguishing characteristic between the black woman and the white man. Consequently, the trial judge granted a new trial under *Batson* and a panel of this court affirmed that decision on appeal.

*Jones* applies to situations in which the sole reason proffered for striking a black venireperson applies with equal force to a white venireperson whom the prosecutor declined to challenge. In such a case, the prosecutor's neutral explanation should ordinarily be deemed a pretext as a

matter of law. *Cf. Garrett v. Morris,* 815 F.2d at 514 (blacks allegedly challenged because of lack of education, yet whites with limited education not challenged); *Gamble v. State,* 257 Ga. 325, 357 S.E.2d 792 (1987) (blacks allegedly challenged because of age, lack of intelligence, and kinship with persons with drug and alcohol problems, yet whites with same characteristics not challenged); *Slappy v. State,* 522 So.2d 18 (Fla.1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988) (black woman allegedly challenged because she was a teacher, yet white teacher not challenged). In the case sub judice, the trial court could have reasonably concluded that the challenged venirepersons were not similarly situated with the unchallenged venirepersons. Therefore, the trial judge did not clearly abuse his discretion by accepting the prosecutor's neutral explanation.

▆ Appellant also argues that the explanation was pretextual because the prosecutor did not question every venire panel member regarding his ties to the neighborhood. The voir dire transcript indicates that the Commonwealth failed to ask fourteen of thirty-six venire panel members whether they knew the area. Moreover, five venirepersons who were not questioned about the neighborhood were selected to sit on the jury. A prosecutor's failure to question venirepersons in a consistent manner is one indication that he might be rejecting prospective jurors on the basis of race. There is, however, no per se rule that a question that is asked of one panel member must be asked of all.

We must bear in mind that the time allowed for voir dire is limited and that counsel must weigh a combination of qualities when deciding how to exercise peremptory challenges. Thus, for example, a prosecutor who generally tries to exclude all people who live in a particular vicinity may be eager to accept a prospective juror who might know the area but who has been the victim of a violent crime. Similarly, a prosecutor who generally tries to exclude all people who live in the area may use her last strike to exclude a prospective juror who might know nothing of the

neighborhood but who appears to be inattentive or hostile. Furthermore, a prosecutor may simply forget to ask a particular question during one segment of the voir dire.

In the instant case, the prosecutor may not have asked some venirepersons about the neighborhood because he trusted them or distrusted them based upon other factors which were unrelated to race. In some instances, the prosecutor may have simply assumed that a venireperson was not likely to know the neighborhood because he had stated that he lived in a section of the city far removed from the scene of the crime. Moreover, we note that *defense counsel* closely questioned some venirepersons about their knowledge of the neighborhood and yet failed to raise this matter with others. On the particular facts of this case, we cannot say that the prosecutor's pattern of questioning provides such clear evidence of racial discrimination that a new trial is required.

In summary, the trial judge found that appellant established a prima facie case of discrimination. This finding was not an abuse of discretion. The trial judge also found that the Commonwealth rebutted this prima facie case of discrimination. This finding was also not an abuse of discretion. Therefore, appellant's *Batson* challenge is not meritorious.

The judgment of sentence is affirmed.

CIRILLO, President Judge, files a concurring opinion in which BROSKY, J., joined.

McEWEN, J., files a dissenting opinion in which JOHNSON, J., joined.

DEL SOLE, J., joins opinion by BECK, J.

MONTEMURO, J., joins opinion by BECK, J.

TAMILIA, J., files a concurring opinion.

POPOVICH, J., joins opinion by BECK, J., except as to subsection IV(A) and files a Concurring Statement.

62

CIRILLO, President Judge, concurring:

I agree with the majority's conclusion that appellant has failed to establish racial discrimination in the selection of the jury that tried and convicted him. I write separately, however, because I believe that the trial court, in determining that a prima facie case of such discrimination had been made out, applied an incorrect legal standard.

Resolution of this issue turns upon the interpretation and application of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court's most recent discussion of *equal protection* guarantees in the context of petit jury selection. *Batson* revisited an area previously addressed by the court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) —the use of peremptory challenges to remove minority venirepersons from the petit jury. Noting that *Swain* had been applied in a manner which placed an almost insurmountable burden of proof upon a criminal defendant seeking to establish racial discrimination in the petit jury selection process, *Batson* made it clear that an equal protection violation may be found where a defendant shows, based on the facts surrounding the empanelment of the jury *in his or her individual case*, that potential jurors have been stricken on account of their race. Thus the evidentiary standard of *Swain*, which had required a showing of systematic use of peremptory challenges to remove minority jurors in case after case, was overruled. In its place, the court laid out an evidentiary test whereby

a defendant can establish a prima facie case [of racial discrimination] by showing that he is a "member of a cognizable racial group," that the prosecutor exercised "peremptory challenges to remove from the venire members of the defendant's race," and that those "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." [*Batson*,] 476 U.S., at 96 [106 S.Ct. at 1723]. Once the defendant makes out a prima facie case of discrimination,

the burden shifts to the prosecutor "to come forward with a neutral explanation for challenging black jurors." *Id.*, at 97, 106 S.Ct. at 1723.

*Teague v. Lane,* —— U.S. —— - ——, 109 S.Ct. 1060, 1066, 103 L.Ed.2d 334 (1989).[1]

In redefining the evidentiary burden to be placed upon a defendant seeking to establish unconstitutional discrimination, however, the *Batson* court made it clear that it was not reshaping the guarantees of the equal protection clause, which had long been read to forbid racial discrimination in the selection of juries. Rather, it recognized that *Batson* and *Swain* sprang from the same deeply rooted constitutional principles and employed the same analytical framework in considering the quantum of proof required to raise a prima facie case of discriminatory use of peremptory challenges. Thus, the statement in *Swain* that "purposeful discrimination may not be assumed or merely asserted.... [but] must be proven, the quantum of proof being a matter of federal law," 380 U.S. at 205, 85 S.Ct. at 827, was echoed in *Batson*, where the court recognized that, to constitute a remediable offense against equal protection principles, the

> governmental action claimed to be racially discriminatory "must ultimately be traced to a racially discriminatory purpose." As in any equal protection case, the "burden is, of course," on the defendant who alleges discriminatory selection of the venire "to prove the existence of purposeful discrimination."

476 U.S. at 93, 106 S.Ct. at 1721 (citations omitted).

Also inherent in *Batson's* redefinition of the burden of proof to be placed upon the defendant was its continued recognition of the importance of the government's interest in the legitimate use of its peremptory challenges. Although it noted that the right of the prosecution to exercise peremptory challenges was not based in the Constitution and must therefore yield to the rights guaranteed by the

---

1. *Batson's* three-part statement of this evidentiary standard has been quoted in the majority opinion and I will not repeat it here, as I believe that *Teague's* gloss on the *Batson* language is more readily understood and applied.

Equal Protection Clause, the court referred with approval to *Swain's* review of "the 'very old credentials' of the peremptory challenge system and noted the 'long and widely held belief that peremptory challenge is a necessary part of trial by jury.' [*Swain* ], 380 U.S., at 219 [85 S.Ct. at 835]." 476 U.S. at 92 n. 15, 106 S.Ct. at 1720 n. 15. Thus *Batson* did not disturb *Swain's* holding that the government has a right to exercise its challenges in any manner it chooses so long as their use does not serve racially discriminatory ends. Nor did it question the statement that

[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry, and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," upon a juror's "habits and associations," or upon the feeling that "the bare question of [a juror's] indifference may sometimes provoke a resentment."

*Swain,* 380 U.S. at 220, 85 S.Ct. at 836.

However, where *Swain* had concluded that the governmental interest in its peremptories could be vindicated only by leaving their use entirely untrammelled unless a system-wide abuse could be shown, *Batson* recognized that such a test left too much room for intentional, but selective, racial discrimination. It therefore sought, not to go to the opposite extreme by abolishing or unduly burdening the use of the peremptory challenge, but rather to reach a new accommodation between "the prosecutor's historical privilege of peremptory challenge free of judicial control and the constitutional prohibition on exclusion of persons from jury service on account of race." 476 U.S. at 92, 106 S.Ct. at 1720.

In rebalancing these competing interests, the *Batson* court had the benefit of two decades of refinement of the

law governing proof of equal protection claims. In that period, the court had recognized that direct proof of discriminatory animus is rarely available and thus that, if the guarantees of the equal protection clause are to be more than hollow promises, a defendant must be permitted to meet his or her burden of proof by use of circumstantial evidence. The test which had evolved, and upon which *Batson's* formulation of the prima facie case of discriminatory use of peremptories was based, was whether the defendant had shown that the *totality of the relevant facts* gave rise to an inference of discriminatory purpose. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721, *citing Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597 (1976). This test was intended to be flexible, a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available," *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977) that " 'takes into account all possible explanatory factors' in the particular case," *Batson*, 476 U.S. at 95, 106 S.Ct. at 1722, *citing Alexander v. Louisiana*, 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536 (1972).

Thus, although the disproportionate impact of a challenged practice upon a racial minority or its potential to be abused by those of a mind to discriminate are proper considerations in determining whether the defendant has made out a prima facie case, those facts alone have never been viewed as sufficient to establish a constitutional violation. *Washington v. Davis*, 426 U.S. at 238–42, 96 S.Ct. at 2046–49. It is only if those factors *in combination with* all other facts that might tend to support or refute the existence of discriminatory animus give rise to an inference of intentional racial discrimination that the burden shifts to the government to prove that the appearance of discrimination can be explained by the application of permissible neutral criteria and procedures. *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23.

Reading *Batson* in light of these evidentiary principles, it becomes clear that the third element of its three-part prima facie case should be the focus of the trial court's inquiry in cases where discriminatory use of peremptory challenges has been alleged. The first element of the test merely specifies the indispensable prerequisites of an equal protection claim: membership in a protected group and state action which affects that group. The second step in the analysis recognizes that the peremptory challenge lends itself to abuse by those who wish to discriminate. However, neither that fact nor the mere fact that strikes were disproportionately exercised against minority venirepersons establishes a prima facie case of discrimination. *Washington v. Davis, supra.* Rather, such factors must be weighed in combination with all other circumstances tending to support or refute the claim of racial animus. Only if the totality of these circumstances gives rise to an inference that the government exercised its peremptory challenges with an intent to discriminate may a prima facie case be found and the government's right to its peremptory challenges be qualified by requiring the prosecutor to come forward with a neutral explanation for his or her actions. To treat this standard of proof too lightly or to apply a lesser standard is to vitiate the *Batson* court's stated intention to protect the legitimate governmental interests served by the peremptory challenge.

Although the majority has properly recited the evidentiary standard of *Batson* as adopted and applied in Pennsylvania, *see Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989); *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988), I believe that its approval of the trial court's bald conclusion that a prima facie case of racial discrimination had been made out is a serious error in the application of that standard. The trial court here did not engage in the type of sensitive inquiry or careful balancing of competing interests contemplated by *Batson's* totality of the relevant circumstances test. Rather, it appears that its conclusion was a mechanical response to the fact that the prosecutor exercised all of his peremptories to strike black

venirepersons. Such a pattern of strikes might, in an appropriate case where none of the attendant circumstances suggested a different motivation, support a reasoned conclusion that an inference of discrimination was raised. *See Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Here, however, I am not convinced that the trial court properly understood the nature of the inquiry required of it under *Batson* or that a consideration of *all* relevant facts, and not merely the pattern of strikes, would have led it to the conclusion that a prima facie case was made out.

An examination of the record in this case indicates that the trial judge's first express finding that a prima facie case had been made out is contained in his opinion prepared for appeal pursuant to Pa.R.A.P. 1925. Although the defense claim of an equal protection violation was first raised at the conclusion of *voir dire*, the trial court denied it at that time, and declined to require the prosecution to state reasons for its challenges, stating

> in view of the fact that the defendant is of the black race, the alleged victim of the crime is a black man, the arresting officer is a black man, and the only white witness in this case ... would be a white detective, under those circumstances, I will accept the District Attorney's assurance that his striking of the seven persons so far was not based on race.

N.T. 1/9/87 at 2.87. The claim was renewed by the defense in post-verdict motions, and at the hearing on those motions the Commonwealth was permitted to put on testimony as to the neutral reasons for exercising the strikes. However, that testimony was heard by the trial court without any finding that a prima facie case had been made out by the defense and despite the court's repeated indications of its belief that because both the victim and the defendant were black, no racial problem existed.

The record of the two instances in which the *Batson* issue was raised and argued in the trial court is thus somewhat at odds with the trial judge's statement, in the opinion he prepared for this appeal, that he had "reached the conclu-

sion, after a study of this record, that the defendant, who is a member of the black race, has established that the action of the prosecution in peremptorily challenging seven potential jurors, all of whom were black, has made out a prima facie case of purposeful discrimination in the selection of the jury panel." Opinion of the Trial Court at 3. The explanation for this disparity is suggested by the trial judge's reliance in reaching this conclusion upon a quotation from this court's decision in *Commonwealth v. Williams*, 364 Pa.Super. 630, 528 A.2d 980, 982 (1987), where a panel stated that

> to make out a prima facie case of intentional discrimination in jury selection, the defendant must establish that he is a member of a cognizable racial group and that the prosecution used peremptory challenges to remove from the venire members of the defendant's race. The defendant can then rely on the presumption that peremptory challenges to veniremen permit discrimination by those inclined to do so, *and thereby establish that the facts and relevant circumstances raise the inference in his case that the prosecutor used the peremptory challenges to discriminate intentionally.*

(emphasis added). In light of the trial judge's previous, apparently strong, feeling that race had not been a factor in the jury selection here, his abrupt reassessment of the adequacy of the defendant's evidence suggests that he interpreted this language to mean that once defendant had shown his membership in a minority group and a pattern of strikes against other members of his race, a finding of a prima facie case was *required.* Such a reading presents a clear conflict with *Batson, Washington v. Davis,* and the long line of equal protection cases using a totality of the circumstances test, however, and thus could not have been intended by the Superior Court panel. Properly read, *Williams* merely restates and simplifies the somewhat complicated terms in which the *Batson* court couched its eviden-

tiary test.[2]

Based on this misapprehension, the trial court made its finding of a prima facie case without giving any consideration to the circumstances tending to refute a discriminatory motive for the prosecutor's actions in this case. Rather, the trial judge considered such factors as the absence of racially charged issues suggesting a motive for discrimination and the empanelment of two black jurors before the Commonwealth had exhausted its peremptories only in assessing the credibility of the prosecutor's proffered neutral reasons for the challenges.[3] This course of action, while undertaken in an attempt to follow the letter of *Batson,* contravened its intent by tipping the scales too far in favor of the defense. To consider the totality of the circumstances only *after* the value of the government's peremptories has been mitigated by the need to describe to a judge and opposing counsel the sometimes almost whimsical concerns that may permissibly motivate the peremptory challenge renders nugatory the legitimate governmental interest that *Batson* took care to protect.[4]

2. I do not intend to suggest that a trial judge should be afraid to change his or her mind after an initial ruling that no racial discrimination has occurred where the facts of the case support such a reversal. In considering whether such a reversal is appropriate, however, the freshness of the judge's impressions at the time of jury selection and the initial denial of the *Batson* claim should be given considerable weight.

3. In addition, the trial court failed to give consideration at any time to the fact that, although the Commonwealth had a peremptory challenge available to it in the selection of the two alternate jurors, that challenge went unused in the seating of the two alternates, one of whom was black.

4. The determination of whether a prima facie case exists is one of real importance because, once the prosecutor has been required to explain his or her actions, the "essential nature of the peremptory challenge[, which] is that it is ... exercised without a reason stated [and] without inquiry," *Swain,* 380 U.S. at 220, 85 S.Ct. at 836, has been compromised. For this reason, I strenuously disagree with the majority's suggestion that "it is prudent for a court to err on the side of finding a prima facie case and requiring a neutral explanation." The Supreme Court's attempt in *Batson* to ease to a realistically sustainable level the burden of proof placed upon defendants alleging discriminatory jury selection should not be twisted so as to allow a pro forma finding of prima facie racial discrimination. If the prosecution's right to exer-

Had the trial court properly interpreted *Williams* and *Batson* and considered all of the circumstances surrounding this trial in finding a prima facie case here, I might agree with the majority that, applying an abuse of discretion standard of review, that conclusion could be approved. However, because the trial court misconstrued the applicable evidentiary test and because this record discloses facts, noted above, that might have tended to refute the existence of racial animus in this case had the proper test been applied, I cannot agree that defendant has made out a prima facie case of racial discrimination in the selection of the jury panel.

I therefore concur only in the conclusion that appellant has failed to show an equal protection violation and in the affirmance of the judgment of sentence.

BROSKY, J., joins.

TAMILIA, Judge, concurring:

I concur in the result as I believe under the present state of the law and rules of criminal procedure the trial court must be affirmed. I believe that conducting a review of the prosecutor's motives several months after voir dire is totally inadequate for purposes of ascertaining his intent at the time the juror was challenged. Likewise, a procedure attacking the peremptory challenges because of race following the selection of the jurors but prior to impaneling them for trial would prove cumbersome and unworkable.

Since we are increasingly becoming a multi-racial and multi-heritage society, to eliminate the taint of bias in jury selection, it may be time to explore revising the use of peremptory challenges so that striking a juror peremptorily in the first instance must be justified for one or more of the factors which *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), considered to be a neutral

cise peremptory challenges is not to be abolished entirely, neither should it be made meaningless by allowing defendants to strip the government of the primary value of those challenges based on unsupported allegations of racial discrimination.

reason. Cutting through the verbiage and rationale which surround cases of this nature, it appears evident that striking jurors of minority race or background is prima facie discrimination whether the defendant is a minority or not. It would impose no great burden on the prosecutor or defense counsel (if jury selection is to be even handed) to provide explanations for peremptory challenges, which do not have to reach the specificity and particularity of challenges for cause. If such a procedure was presently available, I would not hesitate to reverse the trial court and remand for a new jury trial.

POPOVICH, Judge, concurring:

I join the majority's opinion as authored by the Honorable Phyllis W. Beck, except for Section IV, A of the opinion. Via dicta, Judge Beck, in effect, suggests a new rule of criminal procedure designed to dispose of *Batson* claims. The creation of new rules of procedure is neither the Superior Court's function nor our providence. Accordingly, I limit my agreement with the majority.

McEWEN, Judge, dissenting:

Equal justice for all is not simply an expression of boast, it must be, as well, a declaration of goal. And so it is that this Court is here called upon to interpret and execute the mandate issued by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant claims that the trial prosecutor exhibited an indigenous bigotry by excluding members of the black race from the panel of jurors which was to try him. The trial court concluded that, under *Batson*, appellant had established a prima facie case of discrimination. However, the trial court erred, contends appellant, when it further concluded that the prosecution had adequately assumed the burden "to come forward with a neutral explanation for challenging black jurors." 476 U.S. at 97, 106 S.Ct. at 1723.

I join in the determination of the majority that the trial court properly concluded that the pattern of challenges employed by the Commonwealth raised an inference of

discrimination so as to shift the burden of explanation to the prosecution. However, while I take pride in the obvious careful analysis of my colleagues and admire their insightful expression of view, I am compelled to dissent because:

I do not agree with the majority that *Batson* permits the inclusion of the facts of (1) the race of the victim, and (2) the race of the prosecution witnesses, as relevant factors in the determination by the trial court of a claim that a prosecutor was racially motivated in the use of peremptory challenges.

I am of the mind that the explanation of the prosecution for using all of its peremptory challenges to reject potential black jurors falls so far short of the required "neutral explanation" as to more closely resemble prevarication than pretext.[1]

Since I have been thus convinced by the persuasive opinion in dissent provided by our venerable colleague Judge J. Sydney Hoffman as a member of the panel which earlier considered this appeal, I better serve, for several reasons, to quote his expression:

## "RELEVANCE OF RACIAL ISSUES

"Recent panel decisions by this Court have held that the absence of racial issues in a case is relevant to a determination whether there has been purposeful discrimination in the selection of the jury panel. *See Commonwealth v. McKendrick*, 356 Pa.Super. 64, 514 A.2d 144 (1986). *See also Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853 (1987).[3] More specifically, these cases stand for the

---

**1.** Only the uninitiated will deny that some proportion of prosecutors are disposed to preclude blacks from service as jurors. Those prosecutors argue that the practice of such bias by the prosecution is but an exercise in advocacy to which they are compelled because (1) blacks are less conviction minded than other discernable segments of the populace, and (2) there exists on the part of black jurors an inbred bias in favor of black defendants. Aside from the sociological repugnance of these assertions, such a rationale merits but summary rejection since it ignores the quite fundamental precept that a government of the people must not be permitted to display any of the failings of her people. And, of course, that explanation also overlooks the mother's knee adage that two wrongs do not make a right.

proposition that the presence or absence of 'racial issues' in a case is relevant[4] to the question whether a defendant *has made out a prima facie case* of race discrimination under *Batson v. Kentucky.* The cases thus seem to suggest that a prosecutor's purposefully discriminatory action in excluding black jurors may be constitutionally harmless, if no racial issues are present.

"[The en banc majority states that the result in *Long* and *McKendrick* is not contrary to the result it calls for in this case. However, as] I understand the principles underlying *Batson,* the fact that racial issues are *not* present in a case is irrelevant to a determination whether (a) a defendant has established a prima facie case, or (b) a prosecutor has provided an adequate neutral explanation. Accordingly, I would hold that *McKendrick* and *Long* were wrongly decided [and should be overruled].

"In *Commonwealth v. McKendrick, supra,* the defendant, a black man, was tried by an all-white jury. The defendant argued that the trial court erred in allowing the Commonwealth to use its peremptory challenges to strike all black venirepersons. *Id.,* 356 Pa.Superior Ct. at 74, 514 A.2d at 150. A panel of this Court, applying *Batson,* held that appellant 'has not made a prima facie case.' *Id.,* 514 A.2d at 151. In explaining the rationale for its holding, the panel cited with approval the following analysis by the trial court:

(A)s a practical matter, despite the fact that McKendrick was tried by an all-White jury, he instantly received a fair and impartial trial free of racial concerns. In truth, *there were no racial issues in this case. Both the defendant and his victim were members of the Black race. The greatest portion of the witnesses for both sides were Black. In sum, this was not a case involving an interracial killing in which specific racial groups would be prone to take sides of prejudice.*

*Id.,* 356 Pa.Superior Ct. at 77, 514 A.2d at 151 (emphasis supplied).

"In *Commonwealth v. Long, supra,* the defendant, a black man, was tried by a jury composed of ten white members and two black members. The defendant argued

that the Commonwealth purposefully and deliberately exercised its peremptory challenges to excuse four black venirepersons. *Id.*, 367 Pa.Superior Ct. at 193, 532 A.2d at 855. In rejecting this argument, the *Long* Court emphasized that (1) the actual jury panel included two black members; and (2) '[t]he case to be considered by the panel involved a victim and a defendant who were both black.' *Id.*, 367 Pa.Superior Ct. at 195, 532 A.2d at 856. The panel, applying *Batson*, then held that '[o]n these facts we do not believe an inference can be established that the prosecutor used the peremptory challenges to racially discriminate.' *Id.*, 367 Pa.Superior Ct. at 195, 532 A.2d at 856.

"Both *McKendrick* and *Long* proceed on the assumption that the *only* constitutionally infirm reason the Commonwealth might have for exercising peremptory challenges against black jurors is the belief that, in a case involving racial issues, black citizens might be prejudiced in favor of the defendant, and thus could not fairly try the case. When this temptation does not exist—i.e., when there are no 'racial issues' in a case—*McKendrick* and *Long* would hold, apparently as a matter of law, that a defendant cannot prove purposeful discrimination in the selection of the jury. In my view, *McKendrick* and *Long* reflect a fundamental misapprehension of both the holding in *Batson* and the historical nature and scope of the right underlying that decision. Preliminarily, I would note that there is nothing in the language of *Batson* itself to suggest that the presence of a racial issue is a necessary requirement in establishing a case of race discrimination in the selection of a jury. More fundamentally, such a requirement flies in the face of the second rationale for the United States Supreme Court's decisions in this area: the right of prospective jurors not to be disqualified based on their race.

"In *Batson v. Kentucky, supra,* the Supreme Court described the historical background of this second rationale as follows:

'In *Swain v. Alabama,* [380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965),] this Court recognized that a "State's purposeful or deliberate denial to Negroes on account of

race of participation as jurors in the administration of justice violates the Equal Protection Clause." ... This principle has been "consistently and repeatedly" reaffirmed ... in numerous decisions of this Court both preceding and following *Swain.* We reaffirm the principle today.

'More than a century ago, the Court decided that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded. *Strauder v. West Virginia,* 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). That decision laid the foundation for the Court's unceasing efforts to eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn. In *Strauder,* the Court explained that the central concern of the recently ratified Fourteenth Amendment was to put an end to governmental discrimination on account of race.... *Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure.*

'[T]he defendant [has] the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria.... The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, ... *or on the false assumption that members of his race as a group are not qualified to serve as jurors ....*

\* \* \* \* \* \*

'*Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try.* Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at trial.... A person's race simply is "unrelated to his fitness as a juror." ... As long ago as *Strauder,* therefore, the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror....

'The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice....'

*Batson v. Kentucky, supra* at 87, 106 S.Ct. at 1716–18 (citations and footnotes omitted) (emphasis supplied).

"The *Batson* Court then noted that, with specific regard to the discriminatory use of peremptory challenges, *Swain v. Alabama* recognized that,

'It was impermissible for a prosecutor to use his challenges to exclude blacks from the jury "for reasons wholly unrelated to the outcome of the particular case on trial" *or to deny to blacks* "the *same right and opportunity to participate in the administration of justice enjoyed by the white population.*" ... Accordingly, a black defendant could make out a prima facie case of purposeful discrimination on proof that the peremptory challenge system was "being perverted" in that manner....'

*Id.* at 91, 106 S.Ct. at 1720 quoting *Swain v. Alabama, supra,* 380 U.S. at 224, 85 S.Ct. at 838 (emphasis supplied). Moreover, when discussing the prosecution's burden under *Batson* once a defendant has established a prima facie case, the Court emphasized the *twin* rationales underlying the new rule:

'*Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors,* ... so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black.'

476 U.S. at 97, 106 S.Ct. at 1723 (emphasis supplied).[6]

"These passages should make clear both that (1) the defendant's equal protection rights are *not limited* to cases involving racially-charged issues; and (2) even if the *defen-*

*dant's* rights were so limited, the rights of citizens generally are sufficient to render purposeful racial discrimination in the selection of the venire unconstitutional in a case without racial overtones. Properly understood, then, *Batson* did not *abandon* the prior disapproval of *systems* of discrimination designed to eliminate the participation of *all blacks* in the jury process. Instead, *Batson supplemented* the prior rule, by allowing defendants to prove purposeful discrimination on an *individual* basis as well as on a systematic basis.[7] A panel of this Court succinctly articulated the effect of *Batson* as follows:

> '[T]he purpose of the new rule in *Batson* is to provide a more effective means of ensuring that members of racial minorities are not excluded from the jury for discriminatory reasons *and* to ensure to a defendant the right to be tried by his peers, which may include other members of his own race.'

*Commonwealth v. McCormick*, 359 Pa.Super. 461, 474, 519 A.2d 442, 449 (1986) (emphasis supplied).

"In summary then, the fact that racial issues are *not* present in a case should not affect the viability of a defendant's claim of purposeful discrimination.[8] As *Batson* and *Swain* teach, even where no racial issues are present, the purposefully discriminatory exclusion of members of a cognizable racial group violates the equal protection clause because it denies to the excluded group rights and opportunities enjoyed by the rest of the citizenry. Accordingly, I would hold that, to the extent that *McKendrick* and *Long* focus on the *absence* of racial issues in evaluating claims of purposeful discrimination, they are inconsistent with the principles underpinning *Batson* and cannot be followed. Similarly, I would hold that the absence of racial issues in no way helps the Commonwealth in meeting its burden of establishing a neutral explanation for its exercise of its peremptory challenges, and thus cannot support the majority's decision to affirm the judgment of sentence."

"[3] This interpretation was recently reaffirmed in *Commonwealth v. Monroe*, 373 Pa.Super. 618, 542 A.2d 113 (1988).

"[4] I note that, in *Commonwealth v. McKendrick*, the absence of racial issues was the *only* reason given for the Court's conclusion that

the defendant did not establish a prima facie case. 356 Pa.Super. at 77, 514 A.2d at 151 (quoting trial court opinion).

"6 In his concurring opinion, Justice White emphasized that the rule in *Batson* applied to *both* forms of discrimination:

The Court now rules that such use of peremptory challenges in a given case may, but does not necessarily, raise an inference, which the prosecutor carries the burden of refuting, that his strikes were based on the belief *that no black citizen could be a satisfactory juror or fairly try a black defendant.*

476 U.S. at 100–101, 106 S.Ct. at 1725 (White, J., concurring) (emphasis supplied).

"7 The problem that existed after *Swain*—and which was rectified in *Batson*—was forcefully articulated by Justice Nix, now Chief Justice, in his dissenting opinion in *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975):

In *Swain* the Court reasoned that the presumption [that the prosecutor uses peremptory challenges to obtain a fair and impartial jury] is only overcome where the prosecutor *in case after case* is responsible for the removal of all Negroes from every jury....

"Is justice to sit supinely by and be flaunted in case after case before a remedy is available? Is justice only obtainable after repeated injustices are demonstrated? Is there any justification within the traditions of the Anglo–Saxon legal philosophy that permits the use of a presumption to hid[e] the existence of an obvious fact?

\*　　\*　　\*　　\*　　\*　　\*

*"The glaring weakness in the Swain rationale is that it fails to offer any solution where the discriminatory use of peremptory challenges is made on a selected basis.* In Northern communities systematic exclusion of an entire racial group is rarely seen. More frequently, the problem arises in cases where the facts give rise to racial overtones and where an objective and unbiased jury is most needed. *Swain provides no protection against this type of abuse. To the contrary, it facilitates its perpetuation.*

*Id.* at 298–99, 336 A.2d at 295 (NIX, J., dissenting) (emphasis supplied).

"8 If racial issues are *present,* of course, that fact may help to *establish* the defendant's prima facie case. I emphasize only that, in light of the *dual* policies underlying the rule in *Batson,* the *absence* of racial issues cannot operate as a bar to a defendant's establishing a case of purposeful discrimination."

\*　　\*　　\*　　\*　　\*　　\*

I further differ with the ruling of the majority that the testimony of the trial prosecutor attained the "neutral explanation" required to rebut the prima facie case of discrimination which, the majority and the trial court agree, had been established. Rather, I find that the reasons provided

by the prosecution for rejection of the seven black jurors is so apathetically contrived[2] an account that it is but a further reflection of the discrimination displayed by the prosecutor during the jury selection process. Again, Judge Hoffman so artfully stated the basis for my conclusion that I reecho his expression of view:

## "II. ADEQUACY OF COMMONWEALTH'S SPECIFIC 'NEUTRAL EXPLANATION'

"I turn now to the specific reasons proferred by the trial prosecutor in support of his exercise of his peremptory challenges. Appellant argues, *inter alia,* that all but one of these specific reasons are either legally insufficient or pretextual. For example, appellant argues that a close examination of the voir dire reveals that the trial prosecutor's claim that he peremptorily challenged four black jurors simply because they were familiar with the area is clearly pretextual. For the reasons that follow, I agree that this explanation is pretextual.

"At the post-verdict motion hearing, the trial prosecutor articulated his reason for peremptorily striking the four jurors in question as follows:

The rest of the peremptory challenges that I exercised were individuals who, based on my recollection, had a familiarity with the location where this incident was alleged to have taken place. Either they knew the area, they lived in the area or had friends in the area. My belief was that in a case where I felt it was a strong case, it was an identification issue, as I perceived it, I just felt that if a police officer or if the complaining witness would have testified with regard to having something incorrect

2. The extended delay between the issuance of the peremptory challenges during voir dire examination and the *Batson* hearing conducted by the court could, of course, have served to impede the prosecutor from recounting to the court in certain and precise manner the basis for his rejection of the jurors. The prosecution did not, however, indicate that the delay effected any uncertainty in his final account of the reasons for rejection.

> with regard to distance or street names, that that might have drawn the jury's attention away from what I felt was otherwise a strong case.
>
> So I was trying to see that jurors who said that they had no familiarity with the location of the particular area where the robbery was alleged to have taken place [were seated?].

N.T. May 6, 1987 at 13–14. For purposes of this appeal, I will assume that familiarity with the scene of a crime is a legally sufficient basis for the exercise of peremptory challenges. A close review of the voir dire reveals, however, that this reason, even if it is legitimate as a general matter, was neither uniformly nor neutrally applied; instead, only *black* jurors who indicated a familiarity with the area were challenged by the Commonwealth.

"The jury in this case was selected over a two-day period, during which thirty-six potential jurors were subject to voir dire examination. Of the thirty-six prospective jurors, the Commonwealth *failed to ask* fourteen whether they had a familiarity with the area in question.[11] Moreover, five jurors *were selected to sit* on the jury panel even though they had not been asked (by the judge, defense counsel, or the prosecutor) whether they had a familiarity with the area.[12] In addition, the Commonwealth *failed to strike* three non-black jurors who stated that they *did* have a familiarity with the area. In summary, the Commonwealth did not attempt to *ascertain* whether all prospective jurors were familiar with the area, *accepted* non-black jurors who *were* familiar with the area, and accepted other non-black jurors without *knowing* whether they were familiar with the area.[13] On this record, familiarity with the area cannot be viewed as a racially 'neutral' explanation for the Commonwealth's challenge of four black jurors. In light of these facts, I would conclude that the prosecutor's proffered explanation for exercising four of his strikes against black jurors is clearly pretextual. *Compare Garrett v. Morris*, 815 F.2d 509, 514 (8th Cir.1987) ("The prosecutor's

rationale—the blacks' purported lack of education background, and knowledge—seems clearly pretextual in light of his decision not to strike white jurors who differed in no significant way.'). I would therefore hold that the prosecution has failed to rebut appellant's prima facie showing of purposeful discrimination in the selection of the jury panel.[14] Accordingly, I would vacate the judgment of sentence and remand for a new trial.[15]"

"[11] *See* N.T. January 8, 1987 at 90–91, 121–28, 138–43; N.T. January 9, 1987 at 2.2–2.4.

"[12] *See* N.T. January 8, 2987 at 90–91, 121–28, 138–43; N.T. January 9, 1987 at 2.2–2.4.

"[13] *See* N.T. January 8, 2987 at 90–91, 121–28, 138–43; N.T. January 9, 1987 at 2.2–2.4.

"[14] Appellant also contends that the Commonwealth failed to offer an adequate neutral explanation for peremptorily challenging two of the other three black venirepersons that it excused. Because my conclusion that the Commonwealth racially discriminated in its striking four black prospective jurors in itself requires that a new trial be granted, I need not address the question whether the Commonwealth also discriminated in striking two other jurors. *Cf. United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986). ('Under *Batson,* the striking of one black juror for a racial reason violates the equal protection clause, even where other black jurors are seated, and even where valid reasons for the striking of some black jurors are shown.... *[T]he command of Batson is to eliminate, not merely to minimize, racial discrimination in jury selection.')* (emphasis supplied).

"[15] I emphasize that in concluding that the Commonwealth's proferred explanation is pretextual, I do not mean to suggest that the trial prosecutor consciously misrepresented his motives. Rather, I am mindful of Justice Marshall's observation in his concurring opinion in *Batson:*

"Nor is outright prevarication by prosecutors the only danger here. '[I]t is even possible that an attorney may lie to himself in an effort to convince himself that his motives are legal.' "

476 U.S. at 106, 106 S.Ct. at 1728 (citation omitted).

And so it is that I would reverse the judgment of conviction and provide for a new trial.

JOHNSON, J., joins.